OPINION OF THE COURT
 

 GIBBONS, Circuit Judge.
 

 As debtors begin to assert their new rights under the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101
 
 et seq.
 
 (the Code), the courts have been called upon to define the statutory and constitutional limits of these rights. Of particular concern to secured creditors has been the bankruptcy courts’ power under Section 522(f) to avoid certain liens on exempt property as defined in Section 522(b) and (d). This court has recently discussed the applicability to cognovit notes of Section 522(f)(1) permitting the avoidance of judicial liens, and has upheld the retroactive application of that subsection to liens attaching before the new Code was enacted.
 
 [1]
 
 In this case we consider the extent of debtors’ right to aggregate exemp-lions under various provisions of Section 522 for purposes of lien avoidance.
 

 I.
 

 Peter C. and Nancy L. Augustine (Debtors) filed a joint voluntary petition for bankruptcy under Chapter 7 of the Code, 11 U.S.C. § 701
 
 et seq.,
 
 on November 1, 1979 (after the October 1, 1979 effective date of the Cotie) in the Bankruptcy Court for the Western District of Pennsylvania. On their Schedule B-4-Property Claimed as Exempt, they listed items of property that concededly constitute tools or implements of the trade of farming valued at $11,800. It has also been stipulated that Peter C. Augustine is a “farmer” as defined in Section 101(17) of the Code and that neither the trustee nor any unsecured creditor objected to any of the claimed exemptions.
 

 The United States, acting through the Farmers Home Administration of the United States Department of Agriculture, had made a series of loans to the Debtors from 1973 until 1977 secured by liens in personal property, including farm animals and equipment. In particular, the United States has held a duly perfected, nonpossessory, non-purchase-money security interest in all of the farm tools and implements for which exemption is claimed. On • February 14, 1980, the United States filed a complaint alleging that the Debtors had defaulted on their secured loans and requesting the court to vacate the automatic stay of enforcement of its liens that is authorized by 11 U.S.C. § 362. The Debtors countered with a complaint seeking avoidance of these liens
 
 *584
 
 to the extent of $11,800 in claimed exemptions.
 

 The Bankruptcy Court held that the Debtors could avoid the lien of the United States without violation of the Constitution, but only to the extent of $750.
 
 In re Augustine,
 
 7 B.R. 565, (Bkrtcy.W.D.Pa.1980). This decision was affirmed on May 12,1981, in an appeal taken by the Debtors to the District Court.
 
 Augustine v. United States,
 
 5 C.B.C.2d 542 (W.D.Pa.1981). They have appealed again to this court, contending that the Code entitles them to avoid the lien of the United States to the extent of $11,800 in claimed exemptions. We reverse.
 

 II.
 

 In order to give debtors a fresh start, Congress in Section 522 of the Code provided for the exemption of certain property which would otherwise be distributed to unsecured creditors.
 
 [2]
 
 Property on which exemptions may be claimed includes:
 

 (1) The debtor’s aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.
 

 (5) The debtor’s aggregate interest, not to exceed in value $400 plus any unused amount of the exemption provided under paragraph (1) of this subsection, in any property.
 

 (6) The debtor’s aggregate interest, not to exceed $750 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor....
 

 11 U.S.C. § 522(d). Congress also provided that Section . 522 “shall apply separately to each debtor in a joint case.” 11 U.S.C. § 522(m). Moreover Congress did not limit the availability of the exemptions to property which would otherwise be distributed to unsecured creditors. It also provided:
 

 Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in projierty to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
 

 (1) a judicial lien; or
 

 (2) a nonpossessory, nonpurchase-money security interest in any—
 

 (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
 

 (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor;
 

 11 U.S.C. § 522(f). Thus the exemptions were made effective to some extent against secured creditors as well.
 

 In Schedule B-4-Property Claimed as Exempt, each Debtor claimed exemptions under Section 522(d)(1) of $1400 in residential property, a house trailer. They also each claimed the difference between $7500 and that sum plus $400 as provided for in Section 522(d)(5), and the $750 provided for in Section 522(d)-(6), all of which they sought to have applied to a list of farm implements, including a tractor. It is undisputed that if each is entitled to the exemptions, and they may be aggregated, the total of $14,500 exceeds the value of the designated personal proj>erty on which the government asserts a lien. For purposes of lien avoidance under Section 522(f), the Bankruptcy Court allowed only one $750 exemption under Section 522(d)(6), which it applied to an Allis Chalmers 190 XT Tractor valued at $6500. Thus the lien of the Unit
 
 *585
 
 ed States on that tractor was preserved for the balance. The Debtors urge that Section 522(m), making the entire section applicable to each debtor in a joint case, entitles them to two such exemptions to be used for lien avoidance.
 

 The United States is in agreement with the Debtors on this point, and so are we. The Bankruptcy and District Courts apparently had only Peter in mind when they ruled in favor of a single $750 exemption. A close reading of Subsection (d)(6) in conjunction with Subsection (a)(1), however, reveals that they erred. The tools of the trade exemption is available both to the debtor and to a dependent. A dependent “includes spouse, whether or not actually dependent.” 11 U.S.C. § 522(a)-(l). Since Peter is a “dependent of the debtor” Nancy according to Subsection (a)(1), since farming is the trade of that dependent, and since (according to the Bankruptcy Court, 7 B.R. at 569) Nancy and Peter owned the equipment as tenants by entireties, Nancy’s aggregate interest in the tractor — not to exceed $750 — is exempted as well.
 
 [3]
 
 Subsection (m) then also allows Nancy to avoid the lien on her $750 interest in the tractor pursuant to Section 522(f)(2)(B).
 

 Section 522(d)(5) entitles each debtor to an exemption worth $400 plus any unused portion of the $7,500 homeowners’ exemption specified in Subsection (d)(1). Since Peter and Nancy each claimed only a $1,400 exemption in their house trailer, they both had $6,500 left to apply to “any property” by the terms of Subsection (d)(5). Schedule B-4 evidences their nearly complete use of this amount, indicating a total of $12,999.95 in claimed (d)(5) exemptions.
 
 [4]
 
 Since they chose to apply $10,300 of this total to farm tools subject to the government’s security interest, they believe they are entitled, pursuant to Subsection (f)(2)(A), to avoid the lien to that extent.
 

 Because neither the Bankruptcy nor the District Court discussed this use of Subsection (d)(5) by the Debtors, we cannot be certain how they viewed aggregation of (d)(5) exemptions and (d)(4) exemptions for purposes of lien avoidance.
 
 [5]
 
 We do, however, have the benefit of both the government’s arguments opposing Debtors’ position and a few published decisions supporting that position.
 

 While admitting that a literal reading of Section 522 permits the lien avoidance urged by the Debtors, the United States points to remarks in the House Report concerning Subsection 522(f) as evidence that such a reading leads to an unintended, unjust and unreasonable result. According to that Report, the lien avoidance provisions of that subsection were designed to eliminate threats from over-reaching creditors who take security interests in debtors’ household goods not so much for their inherent value to creditors as for the power to coerce repayment from debtors fearful of losing these goods.
 
 [6]
 

 The government argues that such a rationale does not apply in the case of large and expensive farm tools that have considerable inherent value to creditors and that are not so personal to debtors as household goods, clothing and the like. It contends that a statutory construction permitting debtors to avoid liens on tools of the trade as “any property” under Subsection (d)(5) instead of being limited to tools of the trade with its concomitant $750 limitation under Subsection (d)(6) would lead to the kind of unintended, “absurd” literal result
 
 *586
 
 avoided in cases such as
 
 Church of the Holy Trinity v. United States,
 
 143 U.S. 457, 459-60, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892).
 

 In citing the House Report, the United States fails to note that not only may debtors avoid nonpossessory, nonpurchase-mon-ey security interests in the sort of personal household items listed in Subsection (f)(2)(A) and specifically mentioned in the Report, but that such security interests are also avoidable with respect to the tools of the trade specified in Subsection (f)(2)(B). While not making mention of them in the Report, Congress could not have been unaware that such tools might well be more expensive than ordinary household goods.
 
 [7]
 

 The central issue, however, is not the difference between household goods and tools of the trade, but whether a debtor may aggregate exemptions authorized by Subsection (d)(5) with the relatively smaller exemptions as granted in Subsection (d)(6) for purposes of lien avoidance with respect to these same types of goods. Apart from the question of lien avoidance, it is undisputed that Congress intended in a non-discriminatory fashion to grant nonhomeown-ers an exemption equal in value to that of homeowners — an exemption worth'$7,500 to be applied to whatever property the non-homeowner debtors might choose.
 
 [8]
 

 The government argues that to permit these consequences of Subsection (d)(5) to be carried over into the provisions of Subsection (f)(2) would actually work an unintended discrimination against homeowners, since that subsection does not permit avoidance of liens on homes.
 
 [9]
 
 It is not the function of this court to question why Congress chose to permit debtors to avoid the particular liens enumerated in Subsection (f). We must assume that Congress understood that the language of that subsection — that the debtor may avoid a lien on property “to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section” — compels the result that Subsection (d)(5) exemptions may be applied to the kinds of property subject to lien avoidance under Subsection (f). Nothing in Section 522 suggests a distinction that would prohibit aggregation for purposes of lien avoidance while permitting it for exemption purposes. Since the windfall to a nonhomeowner in avoiding extensive liens on tools of the trade does not apjiear much different in kind or even in degree than the windfall that owners of such property (or of homes subject to judicial liens) received after the enactment of the new Code, we cannot find the result to be unintended.
 
 [10]
 

 The judgment appealed from will be reversed with instructions to permit the Debtors to avoid the security interests of the United States in Debtors’ farming tools to the extent claimed.
 

 [1]
 

 .
 
 In re Ashe,
 
 669 F.2d 105 (3d Cir. 1982).
 

 As a secured creditor in this case, the United States initially argued that the retroactive application of Section 522(f)(2) worked an unconstitutional taking of property. As the Bankruptcy Court correctly noted,
 
 In re Augustine,
 
 7 B.R. 565, 568 (Bkrtcy.W.D.Pa.1980), the United States cannot expect Fifth Amendment protections or compensation for a taking of its own property pursuant to duly enacted federal legislation.
 
 See, e.g., Alabama v. Texas,
 
 347 U.S. 272, 273-74, 74 S.Ct. 481, 482, 98 L.Ed. 689 (1954) (congressional power to dispose of any kind of property belonging to United States is without limitation).
 

 The United States has not appealed on this issue. Had it done so, it would have been in the awkward position of attacking the retroactive application of Section 522 to itself, while defending the constitutionality of such application in cases against other secured creditors in which the government intervened to uphold congressional power under the Bankruptcy Clause.
 
 See Rodrock v. Security Industrial Bank,
 
 642 F.2d 1193 (10th Cir. 1981),
 
 cert. granted sub nom. U. S. v. Security Industrial Bank,
 
 - U.S. -, 102 S.Ct. 969, 71 L.Ed.2d 108 (1981);
 
 In re Ashe, supra.
 

 [2]
 

 .
 
 See
 
 H.Rep.No.95-595, 95th Cong., 1st Sess. 126 (1977),
 
 reprinted in
 
 [1978] U.S.Code Cong. & Ad.News 5787, 5963, 6087.
 

 [3]
 

 . It is not necessary, as was apparently found by another bankruptcy court in
 
 In re Pommer
 
 er, 10 B.R. 935, 942 (Bkrtcy.D.Minn.1981), that both married debtors be farmers. As long as one spouse has an interest in the property, he or she is entitled to an exemption for tools of the trade of the other spouse.
 

 [4]
 

 . We assume that Nancy’s claimed exemption for a $100 one-half interest in a lawn tractor was erroneously listed as a Subsection (d)(4) exemption for jewelry rather than pursuant to Subsection (d)(5) as done with respect to Peter’s one-half interest in the same lawn tractor.
 

 [5]
 

 . The Bankruptcy Court apparently believed that the entire $11,800 amount of listed exemptions was claimed pursuant to Subsection (d)(6). 7 B.R. at 567.
 

 [6]
 

 . H.Rep.No.95-595, 95th Cong., 1st Sess. 126-27 (1977),
 
 reprinted in
 
 [1978] U.S.Code Cong. & Ad.News 5963, 6087-88.
 

 [7]
 

 . For a list of cases finding that even automobiles, vans or trucks may be exempt as tools of the trade,
 
 see In re Seacord,
 
 7 B.R. 121, 123-24 (Bkrtcy.W.D.Mo.1980) (state exemption for van as tool of trade permits avoidance of lien on van).
 

 [8]
 

 .
 
 See
 
 H.Rep.No.95-595, 95th Cong., 1st Sess. 361 (1977),
 
 reprinted in
 
 [1978] U.S.Code Cong. & Ad.News 5963, 6317. Courts have construed the words “any property” liberally to permit the total $7,900 possible exemption under Subsection (d)(5) to be applied against any property that can be considered a part of the estate under 11 U.S.C. § 541.
 
 See, e.g., In re Smith,
 
 640 F.2d 888, 891-93 (7th Cir. 1981) (debtors may claim causes of action under federal and state truth-in-lending acts as exempt).
 

 [9]
 

 . The homeowners $7,500 exemption, however, may be used to avoid judicial liens to that extent under Subsection (f)(1).
 
 See, e.g., In re Ashe, supra; In re Tursi,
 
 9 B.R. 450, 454 (Bkrtcy.E.D.Pa.1981).
 

 [10]
 

 . Bankruptcy Court decisions cited by both parties are in accord.
 
 See In re Pommerer,
 
 10 B.R. 935, 945 (Bkrtcy.D.Minn.1981) (Subsection (d)(5) exemptions used to avoid liens on farming tools);
 
 In
 
 re
 
 Dubrock,
 
 5 B.R. 353, 356 (Bkrtcy.W.D.Ky.1980) (Subsection (d)(5) exemptions used to avoid lien on automobile as tool of salesman’s trade);
 
 In re Boozer,
 
 4 B.R. 524, 527 (Bkrtcy.N.D.Ga.1980) (Subsection (d)(5) exemptions used to avoid lien on household goods).
 
 Cf. In re Bagley,
 
 1 B.R. 116, 118 (Bkrtcy.E.D.Pa.1979) (Subsection (d)(5) exemptions used to avoid judicial lien on automobile).