In re Jerome Thomas LaFOND and Charlotte Agnes LaFond, Debtors.

PRODUCTION CREDIT ASSOCIATION OF ST. CLOUD, Appellant,

v.

Jerome Thomas LaFOND and Charlotte Agnes LaFond, Appellees.

No. 85–5296.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 10, 1986.

Decided May 14, 1986.

John N. Nys, Duluth, Minn., for appellant.

James P. Fossum, Brainerd, Minn., for appellees.

Before HEANEY, Circuit Judge, TIMBERS,* Senior Circuit Judge, and BOWMAN, Circuit Judge.

HEANEY, Circuit Judge.

The Production Credit Association of St. Cloud (PCA) appeals from the district court's order affirming a bankruptcy court decision in favor of the debtors, Jerome and Charlotte LaFond. The LaFonds filed a voluntary Chapter 7 petition in 1984. The PCA had made a farm-operating loan to them in 1981, secured by a nonpossessory, nonpurchase-money security interest in "all equipment, motor vehicles and fixtures." The bankruptcy court granted the LaFonds' motion to avoid this lien on certain large items of farm equipment valued at $10,475, finding that the pieces of equipment are exempt from the lien in bankruptcy because they are "implements * * * or tools, of the trade of the debtor" under 11

---

* The HONORABLE WILLIAM H. TIMBERS, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

U.S.C. § 522(f)(2)(B), one of the lien-avoidance provisions of the Bankruptcy Code. The district court affirmed, 61 B.R. 303, and the PCA now seeks reversal, arguing that (1) the LaFonds do not qualify as farmers because they lost money farming, Mrs. LaFond was not active on the farm and Mr. LaFond's primary occupation was as a policeman; (2) the meaning of "implements or tools of the trade" of a farmer-debtor under section 522(f) does not encompass large items of farming equipment like those in issue here, and (3) the equipment in any event fails to qualify as implements or tools of the LaFonds' farming trade because the equipment is not "necessary" to their farming operations. Finding no prejudicial error of law or clear error of fact, we affirm.

## I. DISCUSSION.

Section 522(f) of 11 U.S.C. provides in relevant part:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

\* \* \* \* \* \*

(2) a nonpossessory, nonpurchase-money security interest in any—

\* \* \* \* \* \*

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor
\* \* \*

The PCA's first contention is that the La-Fonds' farm equipment may not be considered implements or tools of their trade because they are not engaged in the trade of farming. To be engaged in the trade of farming under section 522(f), the PCA con-

tends that the LaFonds must meet the definition of "farmer" set forth in 11 U.S.C. § 101(17):

(17) "farmer" means person that received more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person.

If this definition is applied, the LaFonds could not be considered farmers because their primary income came from Mr. La-Fond's part-time job as policeman.[1] The district court agreed with the bankruptcy court's holding that "Congress intended that the definition of 'farmer' at § 101(17) was to be applied only where the word 'farmer' itself was used in the Bankruptcy Code, as, for instance, in 11 U.S.C. § 303(a)." Both courts cited the House Report's statement concerning section 101(17) that "[t]he purpose of the definition is for use in the sections of the proposed bankruptcy code prohibiting involuntary cases against farmers." H.R.Rep. No. 595, 95th Cong., 1st Sess. 311 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6268.

Further, it is significant that § 101 contains definitions for only five trades or occupations. Had Congress intended that special definitions of particular trades or occupations be imposed for the purposes of proceedings under § 522(f), it would have defined more trades or occupations in § 101, and would have specified in § 522 that these special Bankruptcy Code definitions would apply.

*In Re LaFond,* 45 B.R. 195, 199–200 (Bankr.Minn.1984) (footnote omitted).

---

1. The LaFonds had the following amounts and types of income for the three years preceding the filing of their bankruptcy petition:

| | Employment as Police Officer | Gross Farm Income | Taxable Farm Income (Schedule F) |
|---|---|---|---|
| 1981 | $14,011.06 | $16,768.47 | ($14,415.05) |
| 1982 | $ 7,524.01 | $20,780.49 | ($20,587.68) |
| 1983 | $ 8,991.00 | $17,551.64 | ($21,658.21) |

(Parenthesis designate a net loss.)

Both courts also reasoned that requiring farmers to meet the eighty percent test would unfairly preclude many debtors legitimately engaged in farming from utilizing the lien avoidance remedy in the manner which Congress intended.

■ The district court, adopting the view of the bankruptcy court, held that

> [a] more realistic definition should take into account the intensity of a debtor's past farming activities and the sincerity of his intentions to continue farming, as well as evidence that debtor is legitimately engaged in a trade which currently and regularly uses the specific implements or tools exempted and on which lien avoidance is sought. *See Middleton v. Farmers State Bank of Fosston*, 41 B.R. 953, 955 (D.Minn.1984); *In Re Yoder*, 32 B.R. 777 (Bankr.W.D. Pa.1983).

We find this view well supported by the language and legislative history of the Bankruptcy Code, the case law and by the policy behind section 522 which is "to give debtors a fresh start." *Augustine v. United States*, 675 F.2d 582, 584 (3d Cir.1982).

■ Applying this test, we find no clear error in the lower court's factual conclusion that the LaFonds are farmers. Although hard economic times resulted in the LaFonds' loss of their farm in Aitken County in November, 1983, the LaFonds have invested over $20,000 in their current farming operations, and continue their bona fide effort to earn a living at farming. We agree with the bankruptcy court's statement that

> "[t]his conclusion is not barred by the fact that Debtor Jerome LaFond derives income from his outside employment. Given the economics of small-farm agriculture under the harsh climatic conditions of Northeastern Minnesota, it is nearly impossible for most farmers to subsist without outside employment."

*In Re LaFond*, 45 B.R. at 200. *See also In Re Yoder*, 32 B.R. 777, 780 (Bankr.W.D.Pa.

Debtors' tax schedules were filed jointly in all three years and show no significant source of

1983), *aff'd in part, rev'd in part on other grounds*, 48 B.R. 744 (W.D.Pa.1984).

Further, we find sufficient evidence to support the district court and bankruptcy court conclusion that Mrs. LaFond is engaged in the trade of farming. The LaFonds' tax returns reveal that she has no significant source of income other than farming, and we agree that, in light of the nature of the LaFond family's farming and cattle-raising operations and Mr. LaFond's 100–hour per month policeman's job, it is reasonable to assume that Mrs. LaFond was tending to farm chores. *In Re LaFond*, 45 B.R. at 202; *see also In Re Pommerer*, 10 B.R. 935, 942 (Bankr.Minn.1981).

■ Next, we reject the PCA's contention that large items of farm equipment may not be considered "implements or tools of the trade." This argument has been rejected by several bankruptcy and district courts, *see, e.g., In Re Middleton*, 41 B.R. 953, 955 (D.Minn.1984) ("As a practical matter, a narrow construction [of the definition of 'implements,' and 'tools of the trade' under § 522(f)(2)] punishes the farmer for being inadvertently dependent on expensive tools of the trade as compared to other trades more dependent on smaller hand tools."); *In Re Currie*, 34 B.R. 745 (D.Kan.1983); *Matter of Lipe*, 36 B.R. 597, 599 (Bankr.Mo.1983); *In Re Pommerer*, 10 B.R. at 945; *In Re Yoder*, 32 B.R. 780; *In Re Liming*, 22 B.R. 740 (Bankr.W.D.Okla.1982); *In Re Decker*, 34 B.R. 640 (Bankr.N.D.Ind.1983), and by the United States Court of Appeals for the Third Circuit, *Augustine*, 675 F.2d at 584.

The PCA raises two arguments why this Court should not adopt the rule set forth in *Augustine*. First, it argues that this Court's decision in *In Re Thompson*, 750 F.2d 628 (8th Cir.1984), puts this Circuit within the line of bankruptcy court cases which hold that liens on large pieces of equipment may not be avoided because the lien avoidance provisions are only available to protect goods of little resale value. *See e.g., In Re Tofstad*, 19 B.R. 34, 35 (Bankr.

income for Debtor, Charlotte LaFond, other than Schedule F, farming income.

N.D.1982); *In Re O'Neal,* 20 B.R. 13, 16 (Bankr.E.D.Mo.1982). In *Thompson,* this Court held that the farmer-debtor could not avoid a lien on 210 of his pigs under 11 U.S.C. § 522(f)(2)(A), which allows for avoidance of liens on items held for "personal, family, or household use," because the pigs were not for personal use but were raised for commercial sale. We agree with the district court and the bankruptcy court that *Thompson* is distinguishable because it involves 11 U.S.C. § 522(f)(2)(A) rather than section 522(f)(2)(B). *Thompson* cites legislative history indicating that section 522(f)(2)(A) was intended to provide avoidance from liens on small personal household items which "are of little or no value to a creditor, other than as a means of coercing payment." H.R.Doc. No. 93–137, 93d Cong. The section 522(f)(2)(B) exemption is, however, a different matter. This section allows debtors "to make a fresh start after bankruptcy by the use of tools or implements necessary to enable him to pursue and make a living at his trade." *In Re Duchesne,* 21 B.R. 390, 391 (N.D.N.Y.1982). *See Augustine,* 675 F.2d at 584; *In Re Walkington,* 42 B.R. 67 (Bankr.W.D.Mich.1984). We agree with the district court that

> Congress, in setting the tools of the trade lien avoidance language in a separate subsection than that provided for household, personal, and family goods, intended that tools and implements could be of more than nominal resale value. * * * Congress could not have been totally unaware of the fact that many "tools" or "implements" of the trade are more expensive than ordinary household goods. The literal meaning of the tools of the trade subsection indicates an intention to allow avoidance of liens on large farm implements and tools, items necessary to a debtor-farmer's new beginning. As was insightfully stated in *In Re Pommerer:*

> > One primary purpose of the Bankruptcy Code is to afford the financially beleagured a fresh start by readjusting financial rights and liabilities ... (Citations omitted). A fresh start can-

not be attained by returning a debtor to point zero. Sec. 522(f) encompasses property which Congress envisioned as necessary to give substance to the concept of a fresh start. This property is required for the maintenance, health and welfare of the debtor and his family, and avoids literal destitution. Eliminate them and the debtor would be left financially fresh, but without a start. (Citations omitted).

10 B.R. at 946.

*See also Augustine,* 675 F.2d at 586.

■ We also find little weight to PCA's second argument that allowing avoidance of liens on large farm implements will damage farmers by reducing the amount of collateral they can use to obtain loans. Whether or not these considerations outweigh the value of providing a fresh start for the bankrupt is not for us to decide. *See Augustine,* 675 F.2d at 586 ("It is not the function of this court to question why Congress chose to permit debtors to avoid the particular liens enumerated in Subsection (f).").

■ The PCA's final contention is that the LaFonds' equipment is not exempt from the lien under the section 522(f)(2)(B) exemption because the items are not necessary for the operation of the LaFonds' farm. The bankruptcy court and the district court applied the third part of the "tools of the trade" test set forth in *Middleton,* 41 B.R. at 955, that "the equipment [must be] commonly understood as 'implements' or 'tools' of the farming trade." We agree with the PCA that it is not enough that equipment be commonly understood as tools of a certain trade; instead, "the test is the reasonable necessity of the item to the debtor's trade or business." *In Re Seacord,* 7 B.R. 121 (Bankr. W.D.Mo.1980).

■ The equipment at issue consists of such items as a tractor, a plow, a wagon and silage box, a haybine, and a cylinder and hoses. The PCA contends that the LaFonds have not used these items and that they are in storage; the LaFonds disagree and point out that the items were simply in storage when the PCA viewed

them in late October, the end of the harvest season in Northeastern Minnesota. After a thorough review of the record, we find sufficient evidence to support the La-Fonds' argument that the basic farm implements at issue are reasonably necessary in their farming operations.

Affirmed.