**FIRST NATIONAL BANK OF PARK FALLS, Appellant,**

v.

**Sandra J. MALEY, Appellee.**

**No. 91–C–27–C.**

United States District Court,
W.D. Wisconsin.

April 8, 1991.

Kevin Klein, Phillips, Wis., for Sandra J. Maley.

Daniel Freund, Eau Claire, Wis., for First Nat. Bank–Park Falls.

OPINION and ORDER

CRABB, Chief Judge.

This is an appeal from a final order of a United States Bankruptcy Judge, in which appellant challenges the bankruptcy court's authority to permit a discharged debtor to reopen a Chapter 7 proceeding to obtain lien avoidance on property that was either undervalued or not claimed as exempt during the original proceeding. Also, appellant challenges the bankruptcy court's decisions to allow lien avoidance for tools of the debtor's trade exempted under the "wild card" exemption of 11 U.S.C.

§ 522(d)(5) and to value the debtor's property at less than appellant's expert witness testified he would pay for it.

I conclude that the bankruptcy judge was correct in holding that lien avoidance is available for tools of the trade sheltered under the wild card exemption, and in permitting the debtor to amend her schedules and obtain lien avoidance after the original proceeding had been closed. I conclude also that the bankruptcy judge acted within his discretion in determining the present value of the debtor's tools to be less than the amount testified to by appellant's expert witness.

For the purpose of deciding this appeal, I find that the record fairly discloses the following facts.

## FACTS

Debtor and appellee Sandra Maley is a divorced mother of three who practices as an optometrist in Phillips, Wisconsin. In January 1985, she and her then-husband obtained a loan from appellant First National Bank of Park Falls, which was secured by optometry equipment. Under the terms of a subsequent divorce decree, the state court awarded the debtor the equipment and the concomitant debt. On August 25, 1988, Maley filed for relief under Chapter 7 of the Bankruptcy Code, listing the optometric equipment, which she identified as including a phoropter, slit lamp, tonometer, lensometer, keratomer, screener, radioscope and miscellaneous items, and which she valued at $1,100. Maley did not list on the schedule a chair and stand that she used in her optometric business. She did not show any liens on the equipment, although the loan secured by the equipment remained outstanding.

Maley claimed $750 of her listed optometric equipment as exempt tools of her trade pursuant to 11 U.S.C. § 522(d)(6), which permits exemption of the debtor's aggregate interest in any tools of the trade of the debtor. She claimed $350 of her equipment (lens screener, radioscope and miscellaneous items) as exempt "wild card" property pursuant to 11 U.S.C. § 522(d)(5), which permits exemption of property up to

a value of $4,150. She used the balance of her wild card exemption ($3,800) for other property.

Maley's Chapter 7 proceeding was closed on February 23, 1989. Sometime later appellant First National demanded surrender of its collateral, and in the spring of 1989, began a replevin action. Maley raised the bankruptcy discharge unsuccessfully as a defense.

On October 21, 1989, Maley filed a motion to reopen her bankruptcy filing to obtain lien avoidance for the tools of her trade that appellant was seeking to repossess. The motion was granted on May 9, 1990, over the objections of appellant First National, which objected both to reopening the proceeding and to Maley's request that she be given lien avoidance for tools of the trade exempted under the wild card provision.

A hearing on lien avoidance was held on July 30, 1990. Before the hearing, the parties agreed that the listed items could have been claimed as exempt tools of the trade under § 522(d)(6), were it not for the statutory limit on the amount that may be exempted under this provision. At the hearing, appellant First National's expert testified that his firm would pay $3,225 for Maley's optometric equipment and $1,050 for Maley's chair and stand, which he had noted when appraising the other equipment. Maley's expert witness testified that his firm would pay only $1,595 for the same items.

Maley testified that she did not consider the chair to be equipment. There was no evidence adduced that the chair and stand were tools of Maley's trade. Maley did not move to amend her schedules or exemption claims to include the chair and stand.

The bankruptcy court found that Maley's equipment was worth $2,200. The bankruptcy court granted Maley's request for lien avoidance and on its own motion, allowed her to amend her wild card exemption claim to reflect the $2,200 value of her equipment including the chair and stand. Maley amended her wild card schedule of exemptions by deleting some items and re-

ducing the value of others in order to shelter the increased value of the tools of her trade.

## OPINION

In a bankruptcy proceeding, all of the debtor's property becomes part of the estate available to satisfy the creditors' claims. 11 U.S.C. § 541(a). The debtor may remove some of the property by claiming exemptions under 11 U.S.C. § 522(b). Anything that is properly exempted passes through bankruptcy and the rest goes to the creditors. *Payne v. Wood,* 775 F.2d 202, 204 (7th Cir.1985). However, even exempted property may not pass to the debtor if it is subject to a nonpossessory, nonpurchase money security interest that is not avoided in the bankruptcy proceeding. 11 U.S.C. § 506(d); *In re Pence,* 905 F.2d 1107, 1109 (7th Cir.1990). Under the Bankruptcy Code such liens may be avoided on the following property:

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor:

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

11 U.S.C. § 522(f)(2). The purpose of this provision is

to prevent the form of overreaching that occurs when a creditor, in order to coerce payment of a debt owed him, seizes or threatens to seize items of slight market value that may nevertheless be of great importance to the happiness, dignity, employability—even identification—of the debtor. These are such items as household furnishings and other household goods, including clothing, held primarily for the personal use of the debtor or his dependents ...

*In re Thompson,* 867 F.2d 416, 418 (7th Cir.1989).

Appellant First National has no objection to the bankruptcy court's avoidance of its lien with respect to the $750 worth of property that Maley listed as exempt under the tools of the trade exemption in § 522(d)(6). Its objection is to the bankruptcy court's extension of lien avoidance to the tools of the trade that Maley claimed as exempt under the wild card exemption, § 522(d)(5), which permits exemption of "The debtor's aggregate interest in any property, not to exceed in value $400 *plus up to $3750 of any unused amount of the exemption provided under paragraph (1) of this subsection* [referring to the debtor's interest in property used as a residence]." (Emphasis added.) Because Maley had available the full $3,750 of her paragraph (1) exemption available for wild card property, she could claim a total of $4,150 under this provision. Although she had used the entire amount in the original proceeding, she was able to reduce the values of some of the originally-listed items and delete some others so as to include as wild card property the full $2,200 that the bankruptcy court determined her tools were worth. This enabled Maley to avoid the bank's lien on all of the tools of her trade.

■ The Court of Appeals for the Seventh Circuit has not addressed the specific question raised by this appeal: whether Congress intended that lien avoidance for tools of the trade extend no further than the $750 maximum set under the specific tools of the trade exemption, or to additional tools exempted under the wild card provision. In my view, the court's holding in *In re Thompson,* 867 F.2d 416, the opinion of the Court of Appeals for the Third Circuit in *Augustine v. United States,* 675 F.2d 582 (3d Cir.1982) and the plain language of the lien avoidance statute support the bankruptcy court's holding that lien avoidance includes tools of the trade exempted under the wild card statute. In *Thompson,* the question was a related one: whether debtors who choose the greater tools of the trade exemption permitted under Wisconsin law may avoid their liens to the full extent of the state exemptions or are bound by the $750 cap on such exemp-

tions under federal law. Although the court expressed profound disagreement with the way in which the Bankruptcy Code's exemptions and lien avoidance provisions are designed to help farmers (because such "helpfulness" in the form of protection for particular farmers actually hurts farmers as a group by increasing the cost of borrowing money), it considered the arguments for giving a strict construction to the lien avoidance statute "overborne by the language and structure of section 522 as a whole." *Id.* at 419. "Section 522(f)(2)(B) explicitly names the tools of the trade exemption as one entitled to lien avoidance. It also makes no reference to section 522(d)(6) save as may be implicit in the identical wording of the two sections, and places no dollar limit (as in section 522(d)(6)) on the exemption." *Id.* at 420. From this, and from the presumption that Congress was aware of the existence of the liberal state tools of the trade exemptions available to debtors, the court inferred a congressional intent to allow debtors to avoid liens to the full extent of their state exemptions, if they chose to use the state exemptions rather than the federal ones.

In dicta, the court noted the argument that

> the "wild card" exemption of 522(d)(5), which allows the debtor to exempt his "aggregate interest in any property, not to exceed in value $400 plus up to $3,750 of any unused amount of the exemption provided" in 11 U.S.C. § 522(d)(1) for the debtor's residence, can be applied to property consisting of tools of the trade, thereby turning the wild-card exemption into another tools of the trade exemption that can be used with section 522(f)(2)(B) to avoid liens. Weird as the argument may seem, the Third Circuit accepted it in *Augustine v. United States, supra,* 675 F.2d at 585–86.

*Id.* at 420. Appellant First National argues from the court's characterization of this procedure as "weird," that the court would not allow such a procedure. This argument draws too much from one word. In context, the court's observations indicate that the argument is a viable one, if not a wise one, given the court's opinions about how bankruptcy law should operate if the goal is to help farmers and wage earners.

In *Augustine,* 675 F.2d 582, the court held that a debtor may aggregate exemptions authorized under the wild card exemption with the smaller exemptions granted in the tools of the trade exemption for the purposes of lien avoidance with respect to these goods.

> We must assume that Congress understood that the language of [subsection (f)]—that the debtor may avoid a lien on property "to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section"—compels the result that Subsection (d)(5) exemptions may be applied to the kinds of property subject to lien avoidance under Subsection (f). Nothing in Section 522 suggests a distinction that would prohibit aggregation for purposes of lien avoidance while permitting it for exemption purposes.

*Id.* at 586. As the court noted, the plain language of subsection (f) dictates lien avoidance for the items specified in the subsection if the lien impairs the exemption to which the debtor would have been entitled.

I agree with the bankruptcy judge's conclusion that since Maley would have been entitled to an exemption under both subsection (d)(5) and (6) for her tools, she is entitled to avoid the lien on all of the exempted tools under subsection (f), even if the total value of the tools for lien avoidance purposes exceeds the $750 cap in subsection (d)(6). To deny her the full amount for lien avoidance would impair her exemption under subsection (d)(5), in violation of the purpose and plain language of that subsection.

The parties have stipulated that all of the items at issue are tools of the trade, which makes it unnecessary to consider whether any of the items are more like "principal capital assets" of the business than like modest implements. *See Matter of Patterson,* 825 F.2d 1140 (7th Cir.1987) (holding that cows and tractor are not personal equipment of modest value intended to be

exempted as tools of the trade under either § 522(d)(6) or (f)).

I turn next to the procedural argument made by appellant First National: that it was impermissible for the bankruptcy court to allow Maley to reopen her closed case and then amend her schedules to include the increased value of her tools of the trade, and her chair and stand. There is no question but that a debtor may reopen a closed case to seek lien avoidance pursuant to 11 U.S.C. § 350, provided the creditor is not prejudiced by the reopening. *In re Quackenbos,* 71 B.R. 693, 695 (Bankr. E.D.Pa.1987) ("overwhelming majority of courts which have considered the issue" have held that debtor may seek to avoid lien after entry of discharge order and even reopen a closed case). *See also Noble v. Yingling,* 29 B.R. 998 (D.Del.1983); *In re Palmquist,* 54 B.R. 24 (Bankr.D.Colo.1985); *Matter of Leeman,* 25 B.R. 180 (Bankr.E. D.Wis.1982). Some courts have held that a creditor's action to enforce its lien after the entry of discharge or the closing of a case constitutes sufficient detrimental reliance to bar a debtor's exercise of her right to avoid a lien. *Quackenbos,* 71 B.R. at 696. Other courts will reopen in such cases but will consider whether to require the debtor to reimburse the creditor for any expenses it has incurred. *Id.*

Appellant First National has not suggested that it was prejudiced in any specific way by the reopening of Maley's case.[1] It cannot show prejudice just by the fact that it hoped Maley would forget about seeking lien avoidance until after her case was closed. "[A] creditor cannot justifiably assume that a debtor's failure to initiate lien avoidance proceedings prior to the expiration of the deadline for filing a dischargeability complaint constitutes a decision by the debtor not to exercise his rights under § 522(f)." *Id.* at 697.

It is not unusual to allow a debtor to reopen her estate to amend a schedule to add a debt, provided the estate is a no-asset one, notice is given pursuant to Bankruptcy Rule 203(b), there is no evidence of fraud or intentional design to omit the debt in the original proceeding, and there is no evidence that a creditor had been harmed in any way. *Stark v. St. Mary's Hosp.,* 717 F.2d 322 (7th Cir.1983). *See also In re Rosinski,* 759 F.2d 539 (6th Cir.1985) (following *Stark;* requiring debtor to show "some justification" that she did not intentionally or recklessly avoid listing the debt).

Appellant First National did not establish before the bankruptcy court that Maley acted fraudulently or intentionally in failing to list her chair and stand in her original proceeding. Appellant did not show that it would be prejudiced in any way by the amendment of the schedule; in fact, it was in no worse position than it had been before the reopening and amendment. Finally, appellant did not show that there would be harm to any other creditor. It would have been better procedure for the bankruptcy court to have given notice before permitting Maley to amend her schedules, but its failure to do so resulted in no injury to appellant, who was well aware of the proceedings at all times.

I turn then to appellant's argument that the bankruptcy judge failed to apply the proper legal standard when he rejected the valuation testimony of appellant's expert witness and chose a figure midway between the value testified to by appellant's expert and that testified to by Maley's witness. Appellant maintains that the judge could not reject its expert's testimony, but fails to make clear why this is so, other than to say that its expert's valuation was what would have been paid to a willing seller. Apparently, appellant is arguing that when a witness states he is willing to purchase items at a certain price, the court must assume that this is what they are worth, since it is reasonable to assume that any seller would take the highest price offered.

1. Appellant would have a good claim for reimbursement of the expenses it incurred in pursuing the replevin action against Maley, but I can find nothing in the record to indicate that appellant sought such reimbursement from the bankruptcy court as a condition of Maley's reopening of her Chapter 7 proceeding.

The flaw in this argument as it relates to this case is that the debtor was not prepared to sell her equipment. She was continuing to use it in her practice. Therefore, even though appellant's expert testified that his company would pay $4,275 for the equipment, the bankruptcy court was not required to accept that testimony as undisputed. It was entitled to weigh the testimony just as it would (and did) weigh the testimony to the contrary and to determine for itself the probable value of the equipment.

■ The bankruptcy court's determination of value is a question of fact which is not reversible unless it is clearly erroneous. Fed.R.Bankr. 8013; *In re First Wisconsin Nat'l Bank v. Federal Land Bank,* 849 F.2d 284, 286 (7th Cir.1988). The finding of value was not clearly erroneous. The bankruptcy court considered the length of time that appellant's expert devoted to his examination of the equipment, the testimony of the debtor's expert that prospective buyers preferred new equipment, that the debtor's equipment would require extensive repair and refurbishing, and concluded that the equipment was worth more than the amount for which Maley had listed it originally, but less than appellant's expert testified he would pay for it. This was a reasonable finding.

In summary, I conclude that the bankruptcy judge did not abridge any rights of the appellant when he permitted Maley to reopen her bankruptcy filing to seek lien avoidance and to amend her exemption schedules, when he extended the lien avoidance to all of the tools of her trade that she listed as exempt under either § 522(d)(6) or (5), and when he did not accept as undisputed the testimony of appellant's expert on the value of Maley's optometric equipment.

### ORDER

The order of the bankruptcy court permitting the debtor to reopen her bankruptcy filing to seek lien avoidance and to amend her exemption schedules, extending the lien avoidance provisions of 11 U.S.C. § 522(f) to all of the debtor's tools of the trade exempted under either 11 U.S.C.

§ 522(d)(5) or (6), and determining the value of the equipment to be $2,200 is AFFIRMED.