# United States Court of Appeals
## For the First Circuit

No. 05-9011

In re DONALD J. WILDING,

Debtor.

DONALD J. WILDING,

Debtor-Appellant,

v.

CITIFINANCIAL CONSUMER FINANCIAL SERVICES, INC.,

Appellee.

APPEAL FROM THE BANKRUPTCY APPELLATE PANEL

FOR THE FIRST CIRCUIT

Before

Torruella and Howard, <u>Circuit Judges</u>,
and Woodlock[*], <u>District Judge</u>.

<u>Christopher M. Lefebvre</u>, with whom <u>Law Offices of Claude Lefebvre & Sons</u> was on brief, for appellant.
<u>Americo M. Scungio</u>, with whom <u>Scungio & Priolo</u> was on brief, for appellee.

January 30, 2007

[*]Of the District of Massachusetts, sitting by designation.

**WOODLOCK, <u>District Judge</u>.**  The question presented is whether 11 U.S.C. § 522(f) permits a debtor to avoid a judicial lien if the lien existed at the filing of the bankruptcy petition but was satisfied after the bankruptcy case closed and before the debtor filed a motion to avoid.  The Bankruptcy Court and the Bankruptcy Appellate Panel below concluded that it does not.  We disagree and will remand the matter to permit the Bankruptcy Court to address any equitable defenses that might be available to the creditor under these circumstances.

**I.**

The bare bones[1] factual background is as follows:

In May 2001, appellee CitiFinancial Consumer Financial Services ("CitiFinancial") recorded a judicial lien on the residence of appellant Donald J. Wilding.  Some six months later in November 2001, Wilding filed for bankruptcy under Chapter 7.  He did not identify the CitiFinancial debt of approximately $10,000 as secured in his schedules; rather, he listed a debt to CitiFinancial in roughly that amount as unsecured.  Wilding received a discharge, in what the Bankruptcy Judge termed "a garden variety Chapter 7

---

[1] We join the Bankruptcy Court and the Bankruptcy Appellate Panel in lamenting the lack of factual detail to be found within the record created by the parties for this case.  Nevertheless, we find in the record the information material to our disposition.  We note, however, that a full record would have made this case more easily comprehensible and might have avoided the unseemly spectacle of lawyers asserting inconsistent statements about facts nowhere to be found in the record in briefing and in oral argument before this court.

bankruptcy no-asset case" on February 7, 2002, and the case was closed on February 15, 2002.

In the course of refinancing the mortgage on his residence nearly two years later in 2004, Wilding found it necessary to address CitiFinancial's lien.[2] As a matter of law, the lien remained in place because "[a]lthough the unsecured portion of a secured creditor's claim may be discharged in a Chapter 7 . . . case, its lien in the collateral normally survives the bankruptcy proceeding and the discharge, and is enforceable in accordance with state law." In re Pratt, 462 F.3d 14, 17 (1st Cir. 2006). On December 22, 2004, Wilding filed a motion to reopen his bankruptcy case for the purpose of avoiding the previously unscheduled judicial lien on his property. Before the motion to reopen was acted upon, Wilding consummated his refinancing and satisfied the lien. On December 29, 2004 a release of the lien was recorded in the Registry of Deeds.

The Bankruptcy Court granted the motion to reopen on January 5, 2005. On January 6, 2005, Wilding filed a motion to

---

[2] Wilding concedes he did not disclose the related debt as being secured by the CitiFinancial judicial lien in the schedules he filed when seeking Chapter 7 discharge. Although the record does not establish whether this omission was inadvertent or intentional, his counsel suggested at oral argument that Wilding, like many Chapter 7 debtors, might have been unaware that a judicial lien had attached. Since it is not apparent how Wilding could have benefitted by failing to schedule an avoidable lien, there is no reason to assume that he intentionally misrepresented the nature of the debt.

avoid the lien.  In opposition, CitiFinancial, which had not opposed the motion to reopen, argued that the lien could not be avoided because it had been satisfied.  Both the Bankruptcy Court and the Bankruptcy Appellate Panel concluded that since the lien was no longer in effect, there was no longer a lien which could be avoided.  The Bankruptcy Court stated, "[q]uite simply, there are no rights or justiciable property interests before the Court, and it is clearly too late to raise any."  The Bankruptcy Appellate Panel held that "because the lien was fully satisfied, it was no longer fixed on property of the Debtor at the time he filed his Motion to Avoid the Lien.  Accordingly, it was too late to employ the benefits of § 522(f) of the Code."  In re Wilding, 332 B.R. 487, 491 (1st Cir. BAP 2005).

## II.

We think the Bankruptcy Court and the Bankruptcy Appellate Panel, by essentially embracing a per se rule, took too narrow a view of the powers of lien avoidance under 11 U.S.C. § 522(f).  Because this is a question of law, we review the Bankruptcy Court's determination de novo.  See In re Lazarus, No. 06-1982, 2007 WL 49640, at *1 (1st Cir. Jan. 9, 2007).

Section § 522(f)(1) states, in relevant part:

> [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is --
>
> (1) a judicial lien . . .

-4-

11 U.S.C. § 522(f)(1). Thus, under the statute, a debtor may avoid the fixing of a lien if three requirements are met: (1) there was a fixing of a lien on an interest of the debtor in property; (2) the lien impairs an exemption to which the debtor would have been entitled; and (3) the lien is a judicial lien. See Culver, LLC v. Chiu, 304 F.3d 905, 908 (9th Cir. 2002).

The parties do not dispute that Wilding has met the first and third requirements; Wilding had an interest in his house before the lien attached and the lien was a judicial lien. See Farrey v. Sanderfoot, 500 U.S. 291, 297-98 (1991) (holding that the debtor must have had an interest in the property before the lien attached to take advantage of § 522(f)); see also Patriot Portfolio LLC v. Weinstein (In re Weinstein), 164 F.3d 677, 680 (1st Cir. 1999).

As for the second requirement, the parties do not dispute that Wilding "would have been entitled to"[3] a homestead exemption.[4] The only matter in dispute is whether Wilding can take advantage of

---

[3] In Owen v. Owen, 500 U.S. 305 (1991), the Supreme Court held that the proper question to ask in determining what the debtor "would have been entitled to" is whether the lien impairs a state or federal exemption to which the debtor would have been entitled but for the lien itself. See id. at 310-13.

[4] Wilding contends he failed to value the real property properly on his schedules. He notes in his brief that he listed the property at $60,000 with a first mortgage lien of $58,000. Consequently, only a modest sum -- far less than that which was the subject of the judicial lien -- would be covered by the exemption. In his brief before us, Wilding's counsel contends that "[i]f valuation were truly an issue Debtor would obviously move to amend his exemptions to permit him to exempt up to $150,000 in his homestead" under the Rhode Island exemption.

§ 522(f) now that he has satisfied the lien, i.e. whether the lien "impairs the exemption" if it no longer exists when the motion to avoid is filed.

CitiFinancial contends that Wilding cannot avoid a lien that does not currently impair the exempt property. At first glance, the language of § 522(f) might seem to support CitiFinancial's position, because the requirement that the lien "impairs" the exempt property is worded in the present tense. Linguistically, the word "impairs" suggests that a lien must actually impair the exempt property at the time the judge renders the decision to avoid.

Wilding, on the other hand, essentially argues that § 522(f) applies as long as the lien impaired his interest in property at the time he filed his bankruptcy petition. He relies upon several cases in which courts have held that the debtor need not have an interest in the exempt property at the time the debtor files his motion to avoid to take advantage of § 522(f). See, e.g., Chiu, 304 F.3d at 908-09; In re Orr, 304 B.R. 875, 877 (Bankr. S.D. Ill. 2004) (following Chiu); In re Mailhot, 301 B.R. 774, 776 (Bankr. D.R.I. 2003) (same); In re Vincent, 260 B.R. 617, 620-21 (Bankr. D. Conn. 2000). But see In re Sizemore, 177 B.R. 530, 531 (Bankr. E.D. Ky. 1995) (holding that debtor cannot take advantage of § 522(f) after debtor has transferred his exempt property); In re Vitullo, 60 B.R. 822, 824 (D.N.J. 1986)(same); In

re Riddell, 96 B.R. 816 (Bankr. S.D. Ohio 1989) (same); In re Carilli, 65 B.R. 280, 282 (Bankr. E.D.N.Y. 1986) (same).

Chiu and similar cases -- including Mailhot, which was decided by the Bankruptcy Judge who decided this case -- are distinguishable from the case before us. In Chiu, for example, the debtor sold the exempt property before filing the motion to avoid. The Ninth Circuit reasoned that the appropriate time to determine whether a debtor has an exempt interest in property is the filing of the petition, not the filing of the motion to avoid the lien. But the liens in Chiu and Mailhot were still effectively in force when the Bankruptcy Court acted upon the motion to avoid. Indeed, in both cases the debtor took care not to satisfy the lien in question when disposing of the exempt property; funds generated by a sale of the property were escrowed pending judicial determination of the validity of the lien. See Chiu, 304 F.3d at 907; Mailhot, 301 B.R. at 776. Thus, the liens in those cases continued to impair the equivalent of exempt property at the time the debtor filed his motion to avoid.

For reasons that do not appear on the record, Wilding failed to protect himself in that fashion. Rather, before filing his motion to avoid, Wilding consummated the refinancing transaction and satisfied the lien in full without holding the funds in escrow pending a determination by the Bankruptcy Court.

Yet although the Chiu line of cases is distinguishable, we

conclude that the lien itself need not exist at the moment the debtor files a motion to avoid for § 522(f) to apply. CitiFinancial's position is based upon a narrow grammatical reading of § 522(f); a broader consideration of § 522 as a whole yields a different result.

The textual touchstone for retrospective relief under § 522(f) is found in the definition of "value" provided for by the statute. Section 522(f)(2)(a) reads:

> For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of --
>
> > (i) the lien;
> > (ii) all other liens on the property; and
> > (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the <u>value</u> that the debtor's interest in the property would have in the absence of any liens.

(emphasis supplied). In § 522, "'value' means fair market value <u>as of the date of the filing of the petition</u> or, with respect to property that becomes property of the estate after such date, as of the date such property becomes property of the estate." 11 U.S.C. § 522(a) (emphasis supplied). It would be an odd result if the statute required the court to measure the value of the property interest as of the petition date, but to measure the value of the lien as of an unrelated point in the future, for example, when the judge actually addresses a motion to avoid. We think the petition date is the operative date for determining the various § 522(f)

-8-

calculations. In order to determine whether a lien impairs an exemption, the Bankruptcy Court must calculate the value of the lien as of the filing of the petition. If the lien "impairs" the exemption on that date, the court may thereafter address whether the lien should be avoided. Consequently, it is not determinative that the lien did not exist (or, in other words, had zero value) when Wilding ultimately filed his motion to avoid.

This reading comports with the mechanics of § 522(f). As the Ninth Circuit in Chiu noted,

> [t]he operation of Section 522(f) is not to avoid a "lien", per se, although that is its practical effect in most cases. Rather, by its terms, Section 522(f) provides for the avoidance of the "fixing" of certain liens. To "fix" means to "fasten a liability upon." Thus, Section 522(f) operates retrospectively to annul the event of fastening.

Chiu, 304 F.3d at 908 quoting In re Vincent, 260 B.R. at 617 (emphasis in original, citations omitted). We find this reasoning persuasive. Section 522(f) seeks to implement the strong public policies -- in particular, "the fresh start policy of the Code which encourages the full application of the Code's exemption provisions," In re Quackenbos, 71 B.R. 693, 695 (Bankr. E.D. Pa. 1987) -- that are at play when lien avoidance is sought. As the Supreme Court has observed, § 522(f) was designed to mitigate the impact of judicial liens "because they are a device commonly used by creditors to defeat the protection bankruptcy law accords exempt property against debts." Farrey, 500 U.S. at 297-98. These

-9-

policies support what we conclude is the most reasonable reading of § 522: that, for the purpose of retrospective relief, the value of the lien is to be calculated as of the filing of the petition.

Thus, we hold that a debtor may avoid a judicial lien under § 522(f) even if he has satisfied the lien prior to filing a motion to avoid, so long as the lien in question impaired an exemption as of the bankruptcy petition date (or the later acquired property date) as reflected in the statutory definition of "value" under § 522.

## III.

That a court sitting in bankruptcy may deploy its equitable powers under § 522 to issue an order avoiding a lien, nunc pro tunc, does not mean that it necessarily should exercise those powers to do so. Although § 522(f) permits a debtor to avoid a lien in cases such as this, CitiFinancial might have available equitable defenses to oppose the motion to avoid. Defenses such as laches, fraud, detrimental reliance, and prejudice are often raised in opposition to a motion to reopen. It is well-settled that a Bankruptcy Judge has discretion to determine -- in light of such defenses -- whether to reopen a bankruptcy petition at all. See, e.g., First National Bank of Park Falls v. Maley, 126 B.R. 563, 567 (E.D. Wis. 1991); In re Procaccianti, 253 B.R. 590 (Bankr. D.R.I. 2000); In re Walters, 113 B.R. 602, 603 (Bankr. D.S.D. 1990); In re Quackenbos, 71 B.R. at 695-96.

In this case, CitiFinancial did not oppose the reopening. But the motion to reopen stage is not the only or perhaps even the best point at which finality concerns may be addressed and balanced against the policy of the Bankruptcy Code to provide "a fresh start" and protect exempt property. It is at the avoidance motion stage when the relative interests of the respective parties are most fully crystallized. Thus, although applying essentially the same test as that applicable for the motion to reopen, the Bankruptcy Court must be prepared to exercise its informed discretion with respect to the motion to avoid filed after bankruptcy proceedings are closed. Cf. In re Levy, 256 B.R. 563 (Bankr. D.N.J. 2000) (granting a motion to reopen but denying the motion to avoid a judicial lien because relief was barred by the defense of laches).

The courts below did not address or calibrate the equities of granting a motion to avoid. Rather, they concluded as a matter of law that it was too late to do so. Consequently, we leave to the Bankruptcy Court in the first instance to address any equitable defenses that might be available. In that connection, we observe that the Bankruptcy Judge may establish conditions so as to avoid any demonstrable prejudice to CitiFinancial from belated avoidance of its judicial lien. See, e.g., In re Dator, 2006 WL 2056678 at *3 (Bankr. D. Mass. 2006) (conditioning reopening on satisfaction by debtors of reasonable fees and expenses, including

-11-

attorneys fees, of judicial lienholders between date of closing Chapter 7 case and date of filing motion to reopen); In re Orr, 304 B.R. at 878 (finding no dispute over value of real estate for purposes of determining extent of impairment and consequently creditor did not need to incur cost of appraisal); but see In re Levy, 256 B.R. at 566-67 (declining to reopen Chapter 13 proceeding because delay in seeking lien avoidance caused "difficult and costly task of hiring appraiser to offer an opinion as to the value of the debtor's property" four years earlier).  We leave to the Bankruptcy Court's informed discretion such issues as how, if at all, the costs or uncertainty of post hoc appraisal of the property should be factored into conditioning the availability of lien avoidance.  We also leave to the Bankruptcy Court's discretion the proper valuation of any impairment of the homestead exemption. See Note 4 supra.

The Bankruptcy Court's denial of the motion to avoid the CitiFinancial lien is **VACATED**.  This case shall be **REMANDED** to the Bankruptcy Court for further proceedings consistent with this opinion.  The parties to bear their own costs.