**In re Lyman Harwood FRASIER, Debtor.**

**No. 01–22572–MSK.**

United States Bankruptcy Court, D. Colorado.

June 16, 2003.

---

Guy Humphries, Denver, CO, for Lymon Harwood Frasier.

Terrance A. Hugar, Denver, CO, for Denver Moving and Storage Company.

Jon B. Clarke, Greenwood Village, CO, for Cherry Creek Place, LLC.

**MEMORANDUM OPINION AND ORDER DENYING (1) DEBTOR'S MOTION TO REOPEN BANKRUPTCY CASE AND (2) DEBTOR'S MOTION TO VOID JUDICIAL LIENS**

SIDNEY B. BROOKS, Chief Judge.

THIS MATTER comes before the Court on April 22, 2003 on:

(1) Lyman Harwood Frasier's ("Debtor") Motion to Reopen Case filed February 4, 2003 (Docket No. 6) and Objections thereto filed by First Cherry Creek Place ("FCCP") on March 3, 2003 (Docket No. 14) and Denver Moving and Storage Company ("DMSC") (together FCCP and DMSC shall also be referred to herein as "Creditors") on March 10, 2003 (Docket No. 16) and

(2) Debtor's Motion to Void Judicial Liens filed February 4, 2003 (Docket No. 7) and the Objection thereto by FCCP on March 3, 2003 (Docket No. 14).

The Court, having reviewed the file, the Stipulated Facts for Hearing on the Motion to Reopen and on Motion to Void Lien filed on April 22, 2003, and having considered the arguments and offers of proof of counsel and being advised in the premises, makes the following findings of fact, conclusions of law and order.

For the reasons stated below, this Court shall DENY the Debtor's Motion to Reopen Bankruptcy Case. Moreover, as a consequence of this Court's denial of the Debtor's Motion to Reopen Bankruptcy Case, the Court shall also DENY Debtor's Motion to Void Judicial Lien as it is MOOT in light of the Court's ruling on the Debtor's Motion to Reopen.

## I. SUMMARY

In brief, the Debtor seeks to reopen his case for the purpose of avoiding judicial liens on his home. The Court, mindful that intent and good faith are *not* factors to consider in reopening a case under the Tenth Circuit precedent, *In re Parker*, 313 F.3d 1267 (10th Cir.2002), *petition for cert. filed*, 71 U.S.L.W. 3699 (U.S. Apr. 25, 2003) (No. 02–1568), still declines to reopen this case on the grounds that excessive delay and laches serve to bar Debtor's Motion to Reopen Bankruptcy Case.

## II. BACKGROUND

The Debtor filed for relief under Chapter 7 of the United States Bankruptcy Code on August 28, 2001. At the time of his bankruptcy filing, Debtor owned his residence located at 2465B S. Xanadu Way, Aurora, Arapahoe County, Colorado ("Property"). On the date of the bankruptcy filing, the Property had a fair market value of $115,000.00. This value was listed in his Schedule A.

FCCP obtained a default judgment against the Debtor and Frasier Engineering Co., LLC on April 8, 1999. A transcript of this judgment was recorded with the Arapahoe County Clerk and Recorder on May 26, 1999. The judgment lien of FCCP at the time of the filing of the bankruptcy case was in the sum · of $186,639.90.

DMSC obtained a default judgment against Debtor and Halbe Engineering Co. on July 6, 1999. A transcript of this judgment was recorded with the Arapahoe County Clerk and Recorder on October 1, 1999. On the filing date of this bankruptcy, DMSC's judgment lien was $7,314.96.

The Property was also subject to at least one consensual lien.[1] The Property

---

1. Evidently, according to Debtor's schedules A and D, there were two consensual liens on the Property. One lien was held by Green Point Mortgage. The parties' Stipulated Facts for Hearing on the Motion to Reopen and on the Motion to Void Lien references this—*and only this*—consensual lien on the

Property. This was also the only consensual lien addressed by the parties at the hearing. However, Schedules A and D reflect that there is (or was) also another consensual lien on the Property held by U.S. Bank in the sum of $15,246.29. The record before the Court is

was encumbered by a deed of trust to Green Point Mortgage. The Green Point Mortgage deed of trust was dated September 19, 2000 and was recorded on November 14, 2000. The original principal amount due to Green Point Mortgage was $97,750.00. This deed of trust is junior by nearly 18 months to the FCCP judgment lien, and junior by over a year to the DMSC judgment lien.[2]

On August 28, 2001, the debt owed to Green Point Mortgage was $97,600.00. Debtor claimed this property as exempt under COLO.REV.STAT. §§ 38–41–201 and 202.[3] By way of their Stipulated Facts for Hearing on the Motion to Reopen and on Motion to Void Lien filed on April 22, 2003, the parties agree that the Debtor is entitled to the maximum Colorado homestead exemption.

On August 26, 1999, DMSC, in an attempt to seek discovery in aid of execution of its judgment, served written interrogatories on Debtor. Debtor filed his bankruptcy case two days later. C. William Schlosser, Jr. served as Debtor's counsel in the case. On August 30, 1999, two days after the filing of his bankruptcy case, Debtor responded to the interrogatories and signed same.

Debtor did not schedule FCCP and DMSC as creditors in his bankruptcy. Debtor's Meeting of Creditors pursuant to 11 U.S.C. § 341 was held on October 4, 2001. The interim trustee in the Debtor's

case filed his Report of No Assets on October 4, 2001. The Debtor received his discharge on December 4, 2001 and his bankruptcy case was closed as a no asset case on December 17, 2001. The record in the case does not reflect that any notice of the bankruptcy case was served on FCCP and DSMC at any time during the pendency of his case.

FCCP obtained a Writ of Execution and had a Sheriff's sale scheduled on the Property set for March 11, 2003. Spurred on by FCCP's actions and after (1) more than three years from the recording of the two transcripts of judgment, (2) seventeen months from the filing of his bankruptcy case, and (3) fourteen months from the date of the granting of his discharge in bankruptcy and the closing of his case, the Debtor filed the pending Motion to Reopen Case and Motion to Void Judicial Lien.

FCCP and DMSC object to the Motion to Reopen Bankruptcy Case for essentially two reasons.[4] The first reason asserted by the Creditors is that the Debtor knew about their claims but purposely failed to list them as creditors. In other words, the Debtor intended to deceive and mislead the Court and his creditors by not listing FCCP and DMSC and their respective judgment liens on the Property. The second reason asserted by the Creditors is that the Debtor has unreasonably delayed seeking the relief requested to the detriment, reliance, and at the expense of the

---

not clear with respect to the status of the U.S. Bank lien.

**2.** As an aside, a mystery of this case is why Green Point Mortgage would have lent $97,600.00 secured by a home valued at $115,000.00 if it was encumbered by liens of approximately $200,000.00?

**3.** Debtor claimed as exempt in Schedule C of his bankruptcy schedules equity in the Property in the sum of $2,153.71. This number was derived by including the scheduled lien to

both Green Point Mortgage in the amount of $97,600.00 and U.S. Bank in the sum of $15,246.29. The maximum exemption at the time Debtor's case was filed was $45,000.00. Assuming U.S. Bank was paid off, the equity to which debtor could claim an exemption would be $17,400.00.

**4.** DMSC, but not FCCP, has also objected to the Motion to Void Judicial Lien for essentially the same reasons.

Creditors. Stated another way, Creditors assert that the doctrine of laches is a basis for precluding the reopening of this case.

## III. ISSUES

There are two issues before this Court raised by the pleadings and argument of counsel. They are as follows:

A. Whether a debtor's intent in failing to schedule a claim is relevant to a bankruptcy court's decision to reopen a case in which there are no assets and no bar date.

B. Whether reopening of this case is precluded by the doctrine of laches.

As stated, the Court concludes that a debtor's intent in failing to schedule a claim is *not* relevant to a bankruptcy court's decision to reopen a case in which there are no assets and no bar date. Nevertheless, this case will not be reopened based upon the doctrine of laches.

## IV. DISCUSSION

### A. Overview of 11 U.S.C. § 350

Pursuant to 11 U.S.C. § 350(b):

> A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

■ In analyzing the matter at hand, this Court must strike a balance between the rights of these creditors on the one hand and the policy of the fresh start afforded to Debtor by operation of Chapter 7 of the Bankruptcy Code. *See In re Beezley,* 994 F.2d 1433, (9th Cir.1993). Congress, by its enactment of 11 U.S.C. § 350(b), has evidenced its intent that the courts, in considering the reopening of a case, should consider, as paramount, the relief accorded to the debtor—i.e. discharge.

### B. Debtor's Intent

The first issue—whether debtor's intent in failing to schedule a claim is relevant to a bankruptcy court's decision to reopen a case in which there are no assets and no bar date—has recently been decided by the United States Court of Appeals for the Tenth Circuit in *In re Parker,* 313 F.3d 1267 (10th Cir.2002), *petition for cert. filed,* 71 U.S.L.W. 3699 (U.S. Apr. 25, 2003) (No. 02–1568). In that case, the Tenth Circuit recognized that the courts are split between applying equitable principles which include consideration of the debtor's intent, or a more mechanical analysis which does not take into consideration of the debtor's intent. *Id.* at 1268. The Court concluded that the more mechanical approach was "better reasoned and more faithful to the language of the Bankruptcy Code." *Id.* (quoting the lower court in *Watson v. Parker (In re Parker),* 264 B.R. 685, 694 (10th Cir. BAP 2001)).

The Court explained:

> Pursuant to § 727(b), the Debtor receives a discharge from all debts that arose before the date of the order for relief under Chapter 7, regardless of whether a proof of claim based on any such debt or liability is filed, unless an exception in 523(a) applies. Under § 523(a)(3)(A), a claim will not be discharged if it was neither listed nor scheduled and the creditor did not have notice or actual knowledge of the case so that the creditor could timely file a claim. Here the bankruptcy court correctly found that § 523(a)(3)(A) does not apply because the Debtor's Chapter 7 case was a no asset case with no claims bar date set; *therefore, [creditor] had suffered no prejudice because [creditor] will have an opportunity to file a claim if any*

*assets are discovered.* Because § 523(a)(3)(A) does not apply, unless [creditor] can establish that the claim was nondischargeable under one of the exceptions referenced in § 523(a)(3)(B), her Claim was discharged by operation of law under § 727(b). We conclude that equitable considerations do not impact the dischargeability of a debt under § 523(a)(3)(A), and therefore, it was unnecessary to reopen the Debtor's Chapter 7 case for the purpose of making that determination. However, we find that the bankruptcy court did not abuse its discretion when it reopened the Debtor's case because the court conducted the right analysis.

*Id.* at 1268–69 (quoting *In re Parker*, 264 B.R. at 694–95) (emphasis added).

■ This Court, abiding by the Tenth Circuit precedent and applying the more mechanical approach, concludes that a debtor's intent in failing to list a creditor or debt is *not* part of the consideration in deciding whether a case should be reopened.

■ The only appropriate inquiry in those instances where a debtor seeks to reopen a case to file a motion to avoid lien under 11 U.S.C. § 522(f) is whether the delay associated with the reopening of the case is accompanied by a demonstration of prejudice to the creditor as a result of the debtor's conduct. *In re Parker*, 264 B.R. at 692 (in order for defense of laches to stand a showing of prejudice to creditor is required); *In re Palmquist*, 54 B.R. 24 (Bankr.D.Colo.1985) (defense of laches is only applicable if the creditor has changed its position or detrimentally relied upon the debtor's failure to avoid the liens at an earlier date).

## C. Doctrine of Laches

■ Passage of time *alone*—here, over three years from the recording of the two transcripts of judgment, seventeen months from the date of the filing of the petition, and fourteen months from discharge—does not *necessarily* constitute prejudice to a creditor sufficient to bar the reopening of a case. *See, e.g., In re Bianucci*, 4 F.3d 526, 528 (7th Cir.1993) (delay alone would not preclude reopening a case, but delay combined with other factors would bar reopening case); *see also, In re Parker*, 264 B.R. 685, 694 (doctrine of laches would not bar reopening of a case for the reason that, while the debtor purposefully left the creditor off his schedules, there was no evidence that the creditor relied on this to her detriment). Unlike other provisions in the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, 11 U.S.C. § 522(f) and Fed.R.Bankr.P. 4003(d) do not set forth a deadline for the filing of a lien avoidance motion. Moreover, 11 U.S.C. § 350(b) and Fed.R.Bankr.P. 5010 do not contain any limitation on the time for filing a motion to reopen a case. Fed.R.Bankr.P. 9024(1) also specifically excludes motions to reopen from the 1 year time limitation prescribed by Fed.R.Bankr.P. 60(b).

Nevertheless, the defense of laches—in other words, a long delay in reopening a case—in conjunction with other factors, may constitute prejudice. *Id.; see Hawkins v. Landmark Fin. Co.*, 727 F.2d 324, 327 (4th Cir.1984) (passage of eight months and failure to reopen case until a creditor instituted a foreclosure proceeding is sufficient to constitute a valid defense of laches); *In re Guzman*, 130 B.R. 489, 492 (Bankr.W.D.Tx.1991) (passage of over a year, alone, was enough to deny reopening of a closed Chapter 7 case); *see also* H.R.Rep. No. 101–595, 95th Cong., 1st Sess. 338 (1977), U.S.Code Cong. & Ad-

min.News 1978, 5963, 6294–95; S.Rep. No. 989, 95th Cong., 2d Sess. 49 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5835 (legislative history and commentary suggests that laches may constitute a bar to the reopening of a case to pursue an action that has been delayed too long).

▮ As a general rule, courts will apply the doctrine of laches when the following two elements are present:

(1) lack of diligence by the party against whom the defense is asserted, and

(2) prejudice to the party asserting the defense.

*Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). In this instance, the Debtor's delay in scheduling the Creditors and dealing with their liens, coupled with the confluence of events and the actions or inaction by the Debtor—before, during and after the bankruptcy—resulted in prejudice to the Creditors, and mandates that this case not be reopened.

### 1. *Debtor Lacked Diligence*

There was, at a minimum, a lack of diligence by the Debtor. First, Debtor did not schedule FCCP and DMSC as creditors in his case despite the evident knowledge that each had a judgment lien on the Property. Second, he was served and responded to written interrogatories by DMSC, with respect to its judgment, *virtually concurrently* with the filing of his bankruptcy case. Not only did the Debtor lack due diligence in preparing his original schedules, but in timely amending his schedules when he knew of the existence of one, if not both, of these judgment lien creditors, or at least could have and should

have been aware.[5] Thus, the first element of establishing the application of the doctrine of laches—lack of diligence—has been met.

### 2. *FCCP and DMSC are Prejudiced by Debtor's Conduct*

With respect to the second element, it is clear that the parties asserting the defense of laches, FCCP and DMSC, are prejudiced by the Debtor's delay.

First, a key distinguishing feature between this case and many others on this subject is that this is *not* a case of "no harm, no foul." *See, e.g., In re Palmquist,* 54 B.R. 24 (Bankr.D.Colo.1985) (in the absence of any evidence that the creditors changed their position or detrimentally relied upon the debtor's failure to avoid the liens at an earlier date, the debtor's motion is not barred by laches). FCCP has expended fees and costs in endeavoring to enforce its lien by way of a scheduled Sheriff's sale on the property. In addition, DMSC incurred fees and expenses in pursuing post-judgment collection efforts. The Creditors detrimentally relied on the belief that Debtor had *not* filed bankruptcy and incurred fees and costs as a result. This erroneous belief and expectation was compounded by the Debtor's continued failure to notify the Creditors of the bankruptcy case.

Second, these are secured judgment creditors. These are not unsecured creditors. *See, e.g., Stark v. St. Mary's Hospital (In re Stark),* 717 F.2d 322, 324 (7th Cir.1983) (in a no asset, no bar date case, Debtor was allowed to reopen a case to include an unsecured medical debt) and *In re Parker,* 313 F.3d 1267 (10th Cir.2002),

---

**5.** Debtor has the right—and obligation—to amend his schedules at any time before the case is closed in accordance with Fed. R.Bankr.P. 1009(a). Moreover, Debtor failed to disclose the pending lawsuit/litigation otherwise required to be reported on his Statement of Financial Affairs.

*petition for cert. filed,* 71 U.S.L.W. 3699 (U.S. Apr. 25, 2003)(No. 02–1568) (debtor allowed to reopen his no asset case to seek a declaration that a former client's legal malpractice claim against him had been discharged). It is significant to point out that, *even though Creditors were not scheduled, the Debtor's personal obligation to Creditors was discharged by operation of 11 U.S.C. § 524. See also* 11 U.S.C. § 523(a)(3). It is the judgment liens of these creditors, however, that survived on the Property since they were not avoided while the case was open. *Dewsnup v. Timm,* 502 U.S. 410, 417, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992) (judgment liens generally survive bankruptcy). That is, the liens have survived and will survive barring the application of 11 U.S.C. § 522(f).

Third, there is no effective or sufficient means to reimburse these Creditors if this Court voids the liens on the Property. Some courts have conditioned a debtor's right to reopen to file a post-discharge lien avoidance action on the debtor reimbursing the creditor for costs and attorney fees incurred in enforcing its judicial lien in state court. *See In re Common,* 69 B.R. 458, 460 (Bankr.N.D.Ill.1987) (where prejudice caused by debtors' delay could be remedied by requiring payment of reasonable attorney fees expended by creditors in attempting to collect debt a case the court would allow the reopening thereof). In this case, the prejudice caused by Debtor's lengthy delay cannot easily or adequately be remedied by requiring payment of reasonable attorney fees expended by the Creditors in pursuing a foreclosure of the property and otherwise dealing with this matter.

■ Finally, if this case is reopened to allow lien avoidance under 11 U.S.C. § 522(f), it would neutralize and vitiate the finality of the discharge entered, and rele-

gate the closing of a bankruptcy case to a rather meaningless act. "The strong policy and purpose of the bankruptcy laws in ensuring 'prompt and effectual administration and settlement of the estate' requires that an interested person, including the debtor, act promptly to preserve its rights." *In re Jackson,* 144 B.R. 853, 854 (Bankr.W.D.Ark.1992) (citing *Virgin Islands Bureau of Internal Revenue v. St. Croix Hotel Corp. (In re St. Croix Hotel Corp.),* 60 B.R. 412, 414 (D.Vi.1986), *aff'd,* 867 F.2d 169 (3d Cir.1989)). Thus, the Court concludes that the blow delivered to these creditors by allowing the reopening of the case, three years after the filing of the judgment liens, seventeen months after the case was filed, and fourteen months after discharge, for the sole purpose of avoiding their judicial liens, cannot be softened or otherwise ameliorated by means other than to deny the Motion to Reopen Bankruptcy Case.

■ Does this square up with the purpose of 11 U.S.C. § 350(b) "to accord relief to the debtor?" This Court believes that it does. The decision of whether to reopen a case is within the broad discretion of the bankruptcy court. *In re Parker,* 313 F.3d 1267, 1268 (10th Cir.2002), *petition for cert. filed,* 71 U.S.L.W. 3699 (U.S. Apr. 25, 2003)(No. 02–1568). Debtor lacked diligence in failing to schedule these Creditors at any time while his bankruptcy case was open. Moreover, Debtor has offered no credible reason as to why the Motion to Reopen Bankruptcy Case and the Motion to Void Judicial Lien were filed so late. *In re Jackson,* 144 B.R. at 855 (mere inattention or neglect is not a basis to reopen a case).

FCCP and DMSC are prejudiced by the Debtor's failure to schedule them or otherwise more timely move to reopen this case. It simply would be inequitable to grant the motion. Moreover, the Debtor is not with-

out remedy here. He could simply file for relief under Chapter 13 of the Bankruptcy Code and deal with these creditors in what is commonly referred to as a "Chapter 20 case." *See, e.g., Johnson v. Home State Bank,* 501 U.S. 78, 87, 111 S.Ct. 2150, 2156, 115 L.Ed.2d 66 (1991); *In re Young,* 237 F.3d 1168, 1174 (10th Cir.2001).

## V. *CONCLUSION AND ORDER*

For the reasons enumerated above, this Court concludes that the Debtor's Motion to Reopen Bankruptcy Case and the Motion to Void Judicial Lien should be denied.

IT IS THEREFORE ORDERED that the Debtor's Motion to Reopen Bankruptcy Case is hereby DENIED.

IT IS FURTHER ORDERED that Debtor's Motion to Void Judicial Lien is DENIED as MOOT in light of the Court's ruling on the Debtor's Motion to Reopen.