In re Bryan Keith TARKINGTON, Tina Marie Tarkington, Debtors.

No. 00–32580.

United States Bankruptcy Court, E.D. Tennessee.

Oct. 29, 2003.

Richard M. Mayer, Knoxville, TN, for Debtors.

Hodges, Doughty & Carson, Thomas H. Dickenson, Knoxville, TN, for Knoxville TVA Employees Credit Union.

William T. Hendon, Knoxville, TN, Chapter 7 Trustee.

Richard F. Clippard, United States Trustee, Patricia C. Foster, Knoxville, TN, for United States Trustee.

## MEMORANDUM ON MOTION TO RE-OPEN CASE AND MOTION TO AVOID JUDICIAL LIEN

RICHARD S. STAIR, Jr., Bankruptcy Judge.

The following matters are presently before the court: (1) Motion to Re–Open Case; and (2) Motion to Avoid Judicial Lien Impairing Debtors' Homestead Exemption (Motion to Avoid), both filed by the Debtors on September 8, 2003. The Debtors first seek to reopen their bankruptcy case and then avoid a judicial lien in favor of Knoxville TVA Employees Credit Union (the Credit Union) encumbering their former residence in Sevierville, Tennessee, because the lien allegedly impairs their homestead exemption. The Credit Union opposes both motions, arguing that it would be futile to reopen the Debtors' bankruptcy case because the court does not have jurisdiction to grant the Motion to Avoid nor do the Debtors still own the real property, therefore no exemption rights still exist.

The trial on these motions was held on October 21, 2003. The record before the court consists of written Stipulations of Fact filed by the parties on October 20, 2003, three exhibits entered into evidence,[1] and the testimony of John Redwine, Collection Manager of the Credit Union, and the Debtor, Bryan Tarkington.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A), (B), (K), and (O) (West 1993).

## I

The Debtors filed the voluntary petition commencing their Chapter 7 bankruptcy case on June 29, 2000. On Schedule A, the Debtors listed their residence at 1220 Jackie Drive, Sevierville, Tennessee (the Residence), at the value of $100,000.00, with liens totaling $105,000.00, held by Tennessee State Bank and Citizens National Bank. The Debtors claimed a homestead exemption in the Residence on their Schedule C in the amount of $7,500.00, as allowed by Tennessee Code Annotated section 26–2–301 (2001).

The Debtors listed the Credit Union as an unsecured creditor on Schedule F, with a claim in the amount of $8,917.00. The Credit Union filed an unsecured proof of claim in the amount of $9,324.23 on November 22, 2000, with supporting documentation. Although a copy was not attached to its proof of claim, on April 12, 2000, the Credit Union obtained a judgment in the Knox County General Sessions Court in the amount of $9,287.31 against the Debtor, Tina Marie Tarkington. The judgment was recorded with the Sevier County Register of Deeds on April 25, 2000, and by virtue of Tennessee Code Annotated section 25–5–101(b) (2001),[2] created a judicial lien encumbering Tina Marie Tarkington's survivorship interest in the Residence. *See Arango v. Third Nat'l Bank (In re Arango),* 992 F.2d 611, 613 (6th Cir.1993) (Under a tenancy by the entirety, the lien creditor of one spouse "may execute a judgment only against that spouse's right of survivorship.").

On October 25, 2000, the Debtors were

---

**1.** Two of the exhibits were stipulated into evidence through the Stipulations of Fact.

**2.** (b) Judgments and decrees obtained from and after July 1, 1967, in any court of record and judgments in excess of five hundred dollars ($500) obtained from and after July 1, 1969, in any court of general sessions of this state shall be liens upon the debtor's land from the time a certified copy of the judgment or decree shall be registered in the lien book in the register's office of the county where the land is located.

TENN. CODE ANN. § 25–5–101(b).

granted their discharge.[3] Their bankruptcy estate was fully administered by the Chapter 7 trustee, who recovered and distributed funds in the total amount of $508.67 to unsecured creditors, including the Credit Union, which received a payment of $73.16 on November 21, 2001. Thereafter, on April 18, 2002, the court entered the Final Decree, closing the Debtors' bankruptcy case.

On September 2, 2003, the Debtors sold the Residence for $116,500.00. After payment of expenses of sale, closing costs, and $65,194.45 to Tennessee State Bank in satisfaction of its first mortgage lien, the Debtors realized $38,947.77.[4] The Credit Union's lien was not satisfied from the proceeds of the sale, and the parties stipulate that it remains a lien against the Residence.[5] To date, Quality Title, Inc., the title company that conducted the closing, has not requested a release of the lien from the Credit Union, but instead, it holds the entire $38,947.77 in escrow.

On September 8, 2003, the Debtors filed the present Motion to Re-Open Case and Motion to Avoid. Mr. Tarkington testified that the Debtors were unaware that the Credit Union had a judicial lien against the Residence at the time they filed bankruptcy, and that they filed the motions after discovering the lien while selling the Residence. They aver that the Credit Union's judicial lien impairs their homestead exemption of $7,500.00, and thus, it should be avoided. Additionally, the Debtors urge the court to employ the valuation of the Residence provided in their Schedule A, despite the fact that the Residence recently sold for $116,500.00.

The Credit Union opposes both motions. First, it opposes the Motion to Avoid, arguing that the court does not have jurisdiction to avoid the lien because the Debtors no longer own the Residence, and that the outcome of the proceeding has no effect upon the bankruptcy estate. Second, the Credit Union argues that because the Debtors no longer own the Residence, they no longer have the right to avoid the lien. Third, with respect to the Motion to Avoid, the Credit Union avers that the proper valuation of the Residence should be the sale price obtained on September 2, 2003, of $116,500.00. The Credit Union argues that the amounts still owing on the first two mortgages were far less than the amounts at the time of the Debtors' bankruptcy filing, resulting in proceeds exceeding the amounts of all three liens on the Residence, and leaving more than $20,000.00 to be realized by the Debtors. Finally, because the Motion to Avoid should be denied, the Credit Union maintains that it would be futile to reopen the Debtors' bankruptcy case, and accordingly, the court should deny that motion as well.

**II**

The Debtors have requested that the court reopen their bankruptcy case in

---

**3.** The parties stipulate that the Debtors received their discharge on October 26, 2000; however, the court takes judicial notice that the actual discharge date is October 25, 2000.

**4.** The second mortgage lien held by Citizens National Bank when the Debtors filed their bankruptcy case had been fully satisfied prior to the sale of the Residence.

**5.** Tennessee Code Annotated section 25-5-101(c) provides that

(c) Attachments, orders, injunctions and other writs affecting title, use or possession of real estate, issued by any court, shall be effective against any person having, or later acquiring, an interest in such property who is not a party to the action wherein such attachment, order, injunction or other writ is issued only after an appropriate copy or abstract, or a notice of lis pendens, is recorded in the register's office of the county wherein the property is situated.

Tenn. Code Ann. § 25-5-101(c) (2001).

order to avoid the Credit Union's judicial lien. The court derives its authority to reopen a closed bankruptcy case from Bankruptcy Code § 350(b), which provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C.A. § 350(b) (1993).[6] The decision to reopen a bankruptcy case is within the bankruptcy judge's sound discretion. *See Rosinski v. Boyd (In re Rosinski)*, 759 F.2d 539, 540–41 (6th Cir.1985). In making its determination, the court "must strike a balance between the rights of [the affected] creditors on the one hand and the policy of the fresh start afforded to Debtor by operation of Chapter 7 of the Bankruptcy Code." *In re Frasier*, 294 B.R. 362, 366 (Bankr. D.Colo.2003).

■ There are no statutory criteria set forth defining "cause" for reopening a closed case, and motions to reopen will be decided on a case by case basis, based upon the equities of each individual case. *See Hawkins v. Landmark Fin. Co. (In re Hawkins)*, 727 F.2d 324, 326 (4th Cir.1984) ("[T]he right to reopen a case depends upon the circumstances of the individual case and that the decision whether to reopen is committed to the court's discretion."); *In re Kapsin*, 265 B.R. 778, 779–80 (Bankr.N.D.Ohio 2001). Nevertheless, "[t]he Court will not reopen [a] case if doing so would be futile[.]" *In re Phillips*, 288 B.R. 585, 587 (Bankr.M.D.Ga.2002); *accord Chanute Prod. Credit Assoc. v. Schicke (In re Schicke)*, 290 B.R. 792, 798 (10th Cir. BAP 2003) ("A bankruptcy court that refuses to reopen a Chapter 7 case that has been closed will not abuse its discretion if it cannot afford the moving party any relief in the reopened case.").

Absent the reopening of the Debtors' bankruptcy case, the Credit Union's judicial lien cannot be avoided. *See In re Garrett*, 266 B.R. 910, 916 (Bankr.S.D.Ga. 2001) ("[I]f a case is not reopened, the loss of federal jurisdiction will ... preclude debtor's lien avoidance.").

■ Several courts have held that the avoidance of a judicial lien falls within the definition of "cause" in § 350(b). *See, e.g., McDonald v. Home State Bank & Trust Co. (In re McDonald)*, 161 B.R. 697, 699 (D.Kan.1993) ("[A]llowing a debtor to reopen a case to utilize his avoiding powers is consistent with both the legislative history and the express language of Section 350(b)."); *In re Cummings*, 172 B.R. 268, 270–71 (Bankr.W.D.Ark.1994) ("[L]ien avoidance is sufficient cause for the purposes of § 305(b)."). Nevertheless, the courts agree that reopening cases shall not be allowed *carte blanche*, but instead, there are limitations that must be recognized.

■ Courts will not generally reopen a case if doing so will unduly prejudice the affected creditor. *See, e.g., In re Bianucci*, 4 F.3d 526, 528 (7th Cir.1993) ("[A] debtor may reopen the bankruptcy case at any time to avoid a lien absent a finding of prejudice to the creditor."); *In re Oster*, 293 B.R. 242, 246 (Bankr.E.D.Cal.2003) ("The remedy under section 522(f)(1) may be exercised at any time, even after the case has been closed and reopened, absent actual prejudice to the creditor, to protect an exemption that was properly claimed."). Additionally, "[a] recognized limitation on the granting of motions to reopen for lien avoidance is the doctrine of laches[,] ... which allows a court to dismiss an action when there exists inexcusable delay in in-

---

6. Section 350(b) is read in conjunction with Federal Rule of Bankruptcy Procedure 5010, which allows "the debtor or other party in interest" to file a motion to reopen a closed case under § 350(b). Fed. R. Bankr. P. 5010.

stituting an action and prejudice to the non-moving party as a result of the delay." *In re Levy,* 256 B.R. 563, 567 (Bankr. D.N.J.2000). "As a general rule, courts will apply the doctrine of laches when the following two elements are present: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Frasier,* 294 B.R. at 368 (citing *Costello v. United States,* 365 U.S. 265, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961)). In other words, when a debtor seeks to reopen a case to avoid a lien under § 522(f), the appropriate inquiry is "whether the delay associated with the reopening of the case is accompanied by a demonstration of prejudice to the creditor as a result of the debtor's conduct." *Frasier,* 294 B.R. at 367.

▮▮▮ "Passage of time *alone* ... does not *necessarily* constitute prejudice to a creditor sufficient to bar the reopening of a case," as there is no statute of limitations for filing a motion to avoid a judicial lien or to reopen a case. *Frasier,* 294 B.R. at 367. "But delay may be prejudicial when it is combined with other factors." *Bianucci,* 4 F.3d at 528. When the creditor is prejudiced in other ways, the factors may be combined to preclude reopening the case. In making its decision, the court should look to the equities of the case, including the consideration of other factors such as whether the creditor incurred any expenses, whether the creditor was secured or unsecured, whether the creditor's prejudice may be cured, the debtor's conduct, and "[t]he strong policy and purpose of the bankruptcy laws in ensuring 'prompt and effectual administration and settlement of the estate' requir[ing] that an interested person, includ-

ing the debtor, act promptly to preserve its rights." *Frasier,* 294 B.R. at 368–69 (quoting *In re Jackson,* 144 B.R. 853, 854 (Bankr.W.D.Ark.1992)); *see also Noble v. Yingling,* 29 B.R. 998, 1003 (D.Del.1983) (including among its equitable factors the time between discharge and the attempts to avoid the lien, reason for the delay, prejudice to the creditor, and any good faith issues).

▮▮▮ In the present case, the Credit Union recorded its judgment on April 25, 2000, two months prior to the Debtors' bankruptcy filing on June 29, 2000. The Debtors received their discharge on October 25, 2000, and after recovery of assets and a nominal distribution to creditors, their bankruptcy case was closed on April 18, 2002. Approximately seventeen months later, the Debtors filed their Motion to Re–Open Case and Motion to Avoid Lien. At trial, Mr. Tarkington testified that the Debtors were unaware of the lien's existence until they sold the Residence on September 2, 2003, and the record reflects that within six days of the closing, they filed their Motion to Re–Open and their Motion to Avoid. On the other hand, in the Statement of Financial Affairs filed with their voluntary petition under Chapter 7 on June 29, 2000, the Debtors disclosed that a judgment had been entered in April 2000 in favor of the Credit Union.[7] Their bankruptcy petition was filed more than two months later. It is not unreasonable to expect that the Debtors' attorney should have checked to see if, in fact, the Credit Union had recorded the final judgment, and thus, created a judgment lien that the Debtors could have sought to avoid during the approximately twenty-two months pendency of their Chapter 7 case.

---

7. The Debtors incorrectly listed the Credit Union debt as a joint debt on their Schedule F, and on their Statement of Financial Affairs, they incorrectly stated that the lawsuit was against both parties. It is undisputed that the judgment was only against Mrs. Tarkington. *See* STIP. Ex A (Judgment).

Additionally, Mr. Redwine, the Credit Union's collection manager, testified that he received a telephone call from Mrs. Tarkington on September 3, 2003, inquiring about the status of the judgment lien and asking him if they could "resolve" the lien. At that time, Mrs. Tarkington did not disclose to Mr. Redwine that the Debtors had sold the Residence one day earlier, despite her knowledge that the Credit Union held a valid judgment lien against the Residence. He stated that the Credit Union first became aware that the Residence had been sold after they had hired their attorney to represent them regarding the Debtors' Motion to Re–Open Case and Motion to Avoid Lien, as neither motion disclosed the September 2, 2003 sale of the Residence.[8] The Debtors offered no explanation for their failure to disclose that they had sold the Residence either in the September 3, 2003 telephone call to the Credit Union or in their Motion to Re–Open Case and Motion to Avoid Lien, both filed on September 6, 2003.[9] Moreover, Mr. Redwine testified that no one, including Quality Title, has ever contacted him regarding a release of the lien, despite the fact that the title company is holding proceeds from the sale in the amount of $38,947.77 in an escrow account.

The court is also concerned that the Credit Union will be required to bear a substantial prejudice if the case is reopened for the purposes of avoiding its lien. First, the Credit Union has already incurred attorneys' fees for defending the motions presently before the court. Sec-

ond, there are several legal issues that would need to be more fully addressed in the context of the Motion to Avoid Lien, including but not limited to, valuation issues for the Residence in 2000 versus its present value, whether the judgment lien against Mrs. Tarkington's survivorship interest in the Residence impairs the Debtors' homestead exemption, and whether the sale of the Residence prior to the Debtors seeking to avoid the lien negates the Debtors' action. "Additional expense imposed on a creditor to defend has to be a relevant factor in assessing prejudice." *In re Caicedo*, 159 B.R. 104, 107 (Bankr. D.Conn.1993). The court agrees with the *Caicedo* court that

> The apparent relative expense to which [the Credit Union] would be put to secure an appraisal based upon values in [2000] and to confirm the balances of prior liens, in light of the amount of the lien in issue, constitutes a form of prejudice directly related to the debtor's delay. I do not believe it is an unfair burden on a debtor who expects to exempt and retain her homestead to require that she either exercise great care in ascertaining and listing the liens on the homestead or seek to remedy the omission of such liens sooner than [seventeen months] after the closing of the case.

*Caicedo*, 159 B.R. at 107–08.

### III

■ The decision to reopen a case is based, in part, on the equity of doing so.

---

8. The Motion to Avoid is, in fact, misleading at best. In addition to the failure to disclose the sale of the Residence, the Debtors, through their counsel, state that the Residence *"has a fair market value of $100,000.00, and the first mortgage on the [Residence] is $80,000.00 owed to Tennessee State Bank, and a second mortgage of $25,000.00 owing to Citizens National Bank."* (emphasis added). Debtors' counsel couched this language in the present tense well-know-

ing that the Residence had been sold six days earlier for $116,500.00, that at the time of sale the Residence was not encumbered with a lien of Citizens National Bank, that the amount paid Tennessee State Bank in satisfaction of its lien was $65,194.45, and that the Debtors had realized $38,947.77 from the proceeds of the sale.

9. *See supra* note 8.

Under the circumstances of this case, the court finds that it would be both inequitable and futile to reopen the Debtors' bankruptcy case. The court finds that the delay between the Debtors' case closing and their Motion to Re–Open was not reasonable, especially when coupled with the prejudice to be incurred by the Credit Union if the case were reopened, the Debtors' conduct in failing to disclose the sale to the Credit Union, and the fact that the Debtors have proceeds of $38,947.77 being held in escrow, which, after deducting a $7,500.00 homestead exemption, would sufficiently pay the Credit Union's judgment in full and still yield more than $22,000.00 to the Debtors. Based upon these findings, the Debtors' Motion to Re–Open Case will be denied, thereby prohibiting consideration of the Debtor's Motion to Avoid Lien which will accordingly be stricken.

An order consistent with this Memorandum will be entered.

### ORDER

For the reasons stated in the Memorandum on Motion to Re–Open Case and Motion to Avoid Judicial Lien filed this date, the court directs the following:

1. The Motion to Re–Open Case filed by the Debtors on September 8, 2003, is DENIED.

2. The Motion to Avoid Judicial Lien Impairing Debtors' Homestead Exemption filed by the Debtors on September 8, 2003, is STRICKEN.

SO ORDERED.