**In re Celestine A. BRADLEY, a/k/a Celestine A. Vienot, a/k/a Celestine A. Torres, a/k/a Celestine A. Bradley–Torres, Debtor.**

**No. 01–35118 (cgm).**

United States Bankruptcy Court, S.D. New York.

May 23, 2007.

---

Michael S. Sachs, Esq. New Windsor, NY, for the Debtor.

Paul L. Marks, Esq., Newburgh, NY, for Ulster Federal Credit Union.

### *MEMORANDUM DECISION DENYING DEBTOR'S MOTION TO AVOID LIEN PURSUANT TO 11 U.S.C. § 522(f)*

CECELIA G. MORRIS, United States Bankruptcy Judge.

In this reopened Chapter 7 case, the Debtor seeks to avoid a judicial lien held by Ulster Federal Credit Union (hereafter, "*UFCU*"). The Debtor voluntarily repaid the judicial lien when she refinanced her home in May 2005. The Debtor now seeks to use 11 U.S.C. § 522(f) to "avoid" the repaid lien and require UFCU to return to the Debtor the money the Debtor voluntarily paid UFCU more than four years after the bankruptcy case was closed. For the reasons set forth below, the Debtor's motion is denied.

### *Jurisdiction*

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(K) (determination of the validity, extent, or priority of liens) and (O) (proceedings affecting the adjustment of the debtor-creditor relationship).

### *Background*

Debtor commenced this no-asset Chapter 7 case by filing a petition on January 22, 2001. The Debtor received a discharge by order dated May 5, 2001, and this case was closed on May 18, 2001. Schedule F to the Debtor's bankruptcy petition listed UFCU as an unsecured creditor, holding a claim for $3,783.71 on account of a "personal loan."

On December 12, 2006, Debtor's bankruptcy counsel, Michael Sachs, moved to reopen the case in order to avoid a judicial lien pursuant to 11 U.S.C. § 522(f). A bankruptcy case may be reopened pursuant to 11 U.S.C. § 350(b) "to administer assets, to accord relief to the debtor, or for other cause." As is the Court's practice, the Debtor's motion to reopen was granted by order dated January 29, 2007, and the Court instructed Debtor's counsel to seek additional relief by separate motion and notice. *See In re Kelly,* 311 B.R. 341, 344 (Bankr.W.D.N.Y.2004) (motion to avoid lien pursuant to 11 U.S.C. § 522(f) constitutes "good cause" to reopen bankruptcy case).

On April 23, 2007, a three-page document, purportedly an attorney affirmation[1], was filed by Mr. Sachs (the *"Motion"*). It appears from the Motion that UFCU recorded a judgment against the Debtor on June 20, 2000 in the amount of $3,783.71, which constituted a lien against the Debtor's residence in the Town of Montgomery, New York. Motion, ¶ 3. The Motion asks the Court "to avoid a judicial lien on Debtor's home and an [sic] Order directing the return of all monies paid by Debtor on this account since May 30, 2001 to the Debtor." Motion, ¶ 2. Substantially the same request is made at paragraphs 6 and 7 of the Motion and in the "Wherefore" clause. The Motion never makes clear the significance of the May 30, 2001 date and fails to set forth the sums the Debtor paid to UFCU after that date. The Motion also incorrectly claimed that the exemption impaired is the federal homestead exemption "pursuant to 11 U.S.C. § 522(d)(1) and 522(d)(5)". New York has "opted out" of the federal exemption scheme as permitted by 11 U.S.C. § 522(b)(1). *See* New York's Debtor & Creditor Law (*"DCL"*) § 284. This means that New York state law, rather than the exemptions found in Section 522(d) of the Bankruptcy Code, apply to New York residents.

UFCU opposed the motion on May 16, 2007 (the *"Opposition"*). In the Opposition, UFCU explains that its lien was repaid in full in May 2005 when the Debtor refinanced her home. Opposition, ¶ 3. Counsel for UFCU confirmed at the May 22, 2007 hearing that it previously issued a satisfaction of judgment to the Debtor.

The Debtor has not rebutted the representations of UFCU's counsel, which are consistent with the Debtor's request that UFCU be directed to "return ... all monies paid by Debtor". Thus, UFCU characterizes this Motion as "ludicrous and frivolous" because: "[T]here is no judgment lien to be vacated. The Debtor herself paid it off." Opposition, ¶ 7.

The Court has taken some pains here to describe the general lack of detail and lack of attention to detail in the Motion. Mr. Sachs exacerbated matters by failing to appear in Court on May 22, 2007, the hearing date he selected for consideration of the Motion. When this matter was first called, the Debtor appeared, as did counsel for UFCU. The Debtor informed the Court that Mr. Sachs would be sending "an associate" who she had never met. Eventually, another attorney did appear on behalf of Mr. Sachs, but that attorney appears to maintain separate offices in New Windsor, New York. The appearing attorney explained that Mr. Sachs had contacted him the evening before and asked him to appear because Mr. Sachs had to attend another hearing in a criminal court.[2] The attorney who stood in for Mr. Sachs at the hearing had been misinformed on virtually every fact in the case, including the fact that UFCU had filed opposition to the Motion. The Court denied a request for an adjournment because UFCU's attorney was present at the hearing and was prepared to participate; thereafter, the attorney substituting for Mr. Sachs suggested that the Court should "rule on the papers."

---

1. One of the pages of the Motion consists of a "Notice of Motion" in which Mr. Sachs erroneously identifies himself as "the attorney for Anita K. Jones, the Debtor herein." Moreover, as filed on the Court's electronic case-filing system, the Motion appears to have been unsigned by Mr. Sachs. For this reason alone, the Motion should have been stricken pursuant to Fed. R. Bankr.P. 9011(a).

2. Mr. Sachs never contacted the Court or opposing counsel to advise of his unavailability.

## DISCUSSION

In relevant part, 11 U.S.C. § 522(f)(1) states:

(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A)a judicial lien[.]

The term "judicial lien" is defined in 11 U.S.C. § 101(36) as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."

■ Under certain circumstances, a debtor's rights under Section 522(f) may continue even after the debtor no longer owns the exempt property. For example, *In re Chiu,* 304 F.3d 905 (9th Cir.2002) upheld the bankruptcy court's avoidance of a lien on the debtors' former homestead property. The debtors' property had been voluntarily sold to a third party before the reopening of the debtors' bankruptcy case, and the disputed sale proceeds remained in escrow pending judicial determination. *Chiu* followed the line of cases that hold that a debtor must have an interest in the exempt property at the time when the lien "fixed" or attached, rather than at the time of the bankruptcy filing or when the Section 522(f) motion is filed. *Id.* at 908. *Chiu* relied on the following reasoning from *In re Vincent,* 260 B.R. 617, 620–621 (Bankr.D.Conn.2000):

The operation of Section 522(f) is not to avoid a "lien", *per se,* although that is its practical effect in most cases. Rather, by its terms, Section 522(f) provides for the avoidance of the "fixing" of certain liens. To "fix" means to "fasten a liability upon". *Farrey v. Sanderfoot,* 500 U.S. 291, 296, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991) (citing Black's Law Dictionary). Thus, Section 522(f) operates retrospectively to annul the *event* of fastening the subject lien upon a property interest. *See id.* Accordingly, the fundamental question of ownership is whether the property encumbered by the subject lien was "property of the debtor" *at the time of the fixing* of that lien upon such property.

(emphasis in original).

*In re Orr,* 304 B.R. 875 (Bankr.S.D.Ill. 2004) followed *Chiu* and held that a debtor could reopen her case to avoid two judicial liens on her former homestead, even though the liens were not discovered until the individual who purchased the homestead property from the debtor attempted to resell it. *But see In re Carilli,* 65 B.R. 280, 282 (Bankr.E.D.N.Y.1986) (debtor had no standing to avoid lien where she voluntarily sold her property five weeks before seeking Section 522(f) relief because "she had relinquished all interests" in the exempt property); *In re Tarkington,* 301 B.R. 502, 508–509 (Bankr.E.D.Tenn.2003) (refusing, on equitable grounds, to reopen the case to avoid a $9,324.23 lien due to (1) 17–month delay between closing of case and motion to reopen, (2) debtors' failure to disclose that the residence had already been sold, and (3) amount in escrow would pay the lien and homestead exemption in full and still yield an additional $22,000 to the debtors).

■ In the case at bar, the Debtor urges the Court to go beyond *Chiu* and *Orr,* not just to avoid a lien, but to force UFCU to return the funds that were voluntarily paid by the Debtor in order to discharge the lien and complete the refinancing of her homestead. This would transform a lien avoidance motion into an action to avoid a voluntary transfer that occurred two years ago, and four years after the conclusion of the bankruptcy

case. *Cf.* 11 U.S.C. § 549(d) (limiting a trustee's power to avoid a post-petition transfer of property of the estate to the earlier of two years after the date of the transfer sought to be avoided, or the time the case is closed).

The First Circuit recently held that a debtor may avoid a judicial lien even if the lien was previously satisfied, "so long as the lien in question impaired an exemption as of the bankruptcy petition date." *In re Wilding*, 475 F.3d 428, 433 (1st Cir.2007). The First Circuit's decision was based upon the finding that the petition date "is the operative date for determining the various § 522(f) calculations." *Id.* at 432.

> If the lien "impairs" the exemption on that date, the court may thereafter address whether the lien should be avoided. Consequently, it is not determinative that the lien did not exist (or, in other words, had zero value) when [the debtor] ultimately filed his motion to avoid.

*Id.* In *Wilding*, the debtor refinanced the mortgage on his residence two years after his no-asset bankruptcy case had been closed. A pre-petition judicial lien creditor was repaid from the proceeds of the refinancing.[3] The Bankruptcy Court granted the debtor's motion to reopen the case, then denied the Section 522(f) motion, concluding (as did the Bankruptcy Appellate Panel) that since the lien was no longer in effect, there was no longer a lien to be avoided. The First Circuit held that the lower courts "by essentially embracing a *per se* rule, took too narrow a view of the powers of lien avoidance under 11 U.S.C. § 522(f)" and remanded the case for the Bankruptcy Court to "calibrate the equities of granting a motion to avoid and to

address any equitable defenses that might be available." *Id.* at 433.

Regardless of whether or not the Bankruptcy Code permits avoidance of a lien that was previously repaid by the Debtor voluntarily, denial of the Motion in this case is warranted for three independent reasons (not counting the various procedural defects in the Motion, including an apparent violation of Fed. R. Bankr.P. 9011(a)).

██ First, the Motion did not provide appraisals or other evidence of the value of the Debtor's property at the time of the bankruptcy filing, more than six years ago. "In deciding the extent of the impairment under Section 522(f), an initial determination must be made of the fair market value of the property for which an exemption is claimed at the time that the petition was filed." *See, e.g., In re Schwartz*, 1993 WL 405010 at *3 (N.D.Ohio June 18, 1993). "As with any motion to avoid a judgment under section 522(f), the debtor carries the burden to establish the value of his property as of the date of the bankruptcy filing." *In re Kelly*, 311 B.R. at 345; *see also In re Saucier*, 353 B.R. 383, 386 (Bankr.D.Conn. 2006) (debtor's opinion testimony, based upon purchase in the previous year, combined with documentary evidence, was sufficient to establish value of home on petition date). The only proof offered by the Debtor here was the Motion, an unsigned attorney affirmation stating only that the homestead property "had an approximate value of $116,000.00." The most that can be said for the Motion is that it is hearsay and is insufficient to satisfy the Debtor's burden of proof. *See* Fed. R.Evid. 801, 802.

**3.** It appears that the debtor in *Wilding* may have filed the motion to reopen prior to finalizing the refinancing and then closed on the mortgage refinancing transaction without awaiting a disposition of the motion to reopen or the opportunity to file a motion to avoid the judicial lien. *See In re Wilding*, 332 B.R. 487, 488 (1st Cir. BAP 2005).

Second, even if the value advanced by the Debtor in the Motion and in her petition is correct, most, if not all of UFCU's lien would not be avoidable. Property is exempt under the Bankruptcy Code only to the extent permitted by applicable law on the date of the filing of the petition. *See* 11 U.S.C. § 522(b)(3).[4] New York's exemption scheme is found in DCL § 282 and the statutes referenced therein.[5] DCL § 282 references Section 5206 of New York's Civil Practice Law and Rules ("*CPLR* "). Prior to amendments effective August 30, 2005, the New York state homestead exemption in CPLR 5206(a) was $10,000. *See, e.g., In re Hayward,* 343 B.R. 41, 47 (Bankr.W.D.N.Y.2006) (increase in homestead exemption not available to New York debtors who filed prior to August 30, 2005). Pursuant to 11 U.S.C. § 522(f)(2)(A):

For the purposes of this subsection, a lien shall be considered to impair an exemption *to the extent that* the sum of—

(i) the lien;

4. This provision was previously found in 11 U.S.C. § 522(b)(2) due to amendments in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which took effect on October 17, 2005 and applies only to cases filed thereafter.

5. DCL § 282 states:

**Under section five hundred twenty-two of title eleven of the United States Code, entitled "Bankruptcy", an individual debtor domiciled in this state may exempt from the property of the estate, to the extent permitted by subsection (b) thereof, only (i) personal and real property exempt from application to the satisfaction of money judgments under** sections fifty-two hundred five and **fifty-two hundred six of the civil practice law and rules,** (ii) insurance policies and annuity contracts and the proceeds and avails thereof as provided in section three thousand two hundred twelve of the insurance law and (iii) the following property:

1. Bankruptcy exemption of a motor vehicle. One motor vehicle not exceeding twenty-four hundred dollars in value above liens and encumbrances of the debtor.

2. Bankruptcy exemption for right to receive benefits. The debtor's right to receive or the debtor's interest in: (a) a social security benefit, unemployment compensation or a local public assistance benefit; (b) a veterans' benefit; (c) a disability, illness, or unemployment benefit; (d) alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor; and (e) all payments under a stock bonus, pension, profit sharing, or similar plan or contract on account of illness, disability, death, age, or length of service unless (i) such plan or contract, except those qualified under section 401, 408 or 408A of the United States Internal Revenue Code of 1986, as amended, was established by the debtor or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose, (ii) such plan is on account of age or length of service, and (iii) such plan or contract does not qualify under section four hundred one (a), four hundred three (a), four hundred three (b), four hundred eight, four hundred eight A, four hundred nine or four hundred fifty-seven of the Internal Revenue Code of nineteen hundred eighty-six, as amended.

3. Bankruptcy exemption for right to receive certain property. The debtor's right to receive, or property that is traceable to: (i) an award under a crime victim's reparation law; (ii) a payment on account of the wrongful death of an individual of whom the debtor was a dependent to the extent reasonably necessary for the support of the debtor and any dependent of the debtor; (iii) a payment, not to exceed seventy-five hundred dollars on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; and (iv) a payment in .compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor. (emphasis added).

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

(emphasis added). According to the Debtor, her homestead "had an approximate value of $116,000.00" and was subject to a first mortgage of $103,400 as per Schedule A of the Debtor's bankruptcy petition. Adding UFCU's judgment lien of $3,783.71 to the first mortgage results in total liens of $107,183.71. After subtracting the total of the two liens ($107,183.71) from the approximate value of the homestead property, equity of $8,816.29 remains. Thus, even if the Debtor could support her estimation of the property's value, UFCU's judgment lien would only have been avoidable under Section 522(f) "to the extent that such lien impairs an exemption to which the debtor would have been entitled[.]" Thus, it is possible that the Debtor's homestead exemption was never impaired by UFCU's lien.

 With regard to the third reason for denial of the Motion, the Court begins by emphasizing a key passage from *Wilding:*

That a court sitting in bankruptcy may deploy its equitable powers under § 522 to issue an order avoiding a lien, *nunc pro tunc,* does not mean that it necessarily should exercise those powers to do so. Although § 522(f) permits a debtor to avoid a lien in cases such as this, [a creditor] might have available equitable defenses to oppose the motion to avoid. Defenses such as laches, fraud, detrimental reliance, and prejudice are often raised in opposition to a motion to reopen.

*Id.* at 433. Avoidance of the lien under these circumstances would almost certainly result in undue prejudice to UFCU. "A recognized limitation on the granting of motions to reopen for lien avoidance is the doctrine of laches. . . . Laches is an equitable defense which allows a court to dismiss an action when there exists inexcusable delay in instituting an action and prejudice to the non-moving party as a result of the delay." *In re Levy,* 256 B.R. 563, 566 (Bankr.D.N.J.2000) (citation omitted). In the context of a Section 522(f) motion, the passage of time, without more, is not usually sufficient to invoke the equitable doctrine of laches. *In re Saucier,* 353 B.R. at 386. Delay may be prejudicial when it is combined with other factors. *In re Tarkington,* 301 B.R. at 507. In *Tarkington,* the court set forth several factors that, in combination, might justify the application of the doctrine of laches to preclude a motion under Section 522(f):

(1) The equities of the case, including the consideration of other factors such as whether the creditor incurred any expenses;

(2) Whether the creditor was secured or unsecured;

(3) Whether the creditor's prejudice may be cured;

(4) The debtor's conduct; and

(5) The strong policy and purpose of the bankruptcy laws in ensuring prompt and effectual administration and settlement of the estate requiring that an interested person, including the debtor, act promptly to preserve its rights.

*Id.* (citations and internal quotations omitted). An earlier case, *Noble v. Yingling,* 29 B.R. 998, 1003 (D.Del.1983), set forth a nonexhaustive list of equitable factors, including:

1) vigor with which the judgment creditors pursued the debtor prior to the

filing of the bankruptcy petition, 2) communication of positions by and between debtor and judgment creditors after filing of the petition and prior to the discharge, 3) motivating cause of failure to file lien avoidance complaint prior to discharge, 4) length of time between discharge and filing of lien avoidance complaint, 5) reasons for delay in filing lien avoidance complaint, 6) prejudice to the judgment creditors, and 7) good faith, or lack thereof, of the creditors.

In this case, the Court believes the doctrine of laches applies due to the prejudice that would result to UCFU. The Court will discuss each of the factors in *Tarkington* and *Yingling*.

■■■ Regarding the first factor in *Tarkington*, the fact that a creditor incurred expenses, standing alone, will rarely invoke the doctrine of laches. Many creditors will incur legal fees and other expenses in defending a Section 522(f) motion, but this should not automatically weigh in favor of denying the motion on laches grounds. That a creditor has incurred expenses would be most relevant to the equities of the case where the expenses were incurred as a direct result of the debtor's delay. For example, as the period of time between the filing of the petition and the Section 522(f) motion increases, it is more likely that the creditor will incur substantial expenses to obtain a historical appraisal regarding the value of the homestead property as of the filing date. *See In re Levy*, 256 B.R. 563, 566 (Bankr.D.N.J.2000) (prejudice to creditor due to expense and difficulty involved with obtaining expert to appraise property value four years ago); *In re Caicedo*, 159 B.R. 104, 107 (Bankr.D.Conn.1993) (expense creditor would incur to obtain appraisal of debtor's property eight years ago constituted prejudice in light of the amount of lien at issue). Requiring a

creditor to return monies received after a debtor has voluntarily repaid a lien will always result in an unexpected expense for the creditor. As recognized in *Wilding*, equitable defenses may arise where a debtor attempts the *nunc pro tunc* avoidance of a lien under Section 522(f). *Id.* at 433–434. Whereas *Wilding* holds that such *nunc pro tunc* avoidance is not improper as a matter of law, this Court believes that such motions, by their very nature, are highly susceptible to equitable defenses.

As for the second *Tarkington* factor (whether the creditor was secured or unsecured), by definition a lien creditor is always, at least nominally, a secured creditor. The second factor serves as a useful gauge of the actual prejudice incurred by a creditor due to a Section 522(f) motion. Where the lienholder is severely undersecured by the property to which the lien attaches, avoidance of the lien may result in no actual prejudice. By contrast, where the lienholder remains "in the money" and would receive proceeds from liquidation of the asset, avoidance of the lien would cause real prejudice. The Court has previously shown in this case that, according to the Debtor's own calculations, sufficient equity existed at the time of the filing to pay all or substantially all of the Debtor's homestead exemption without avoiding UFCU's lien.

In this case, the third factor in *Tarkington* (whether the creditor's prejudice may be cured) weighs in favor of UFCU because the Debtor seeks an affirmative recovery from UFCU and total avoidance of the lien and underlying debt. No cure would be available for UFCU. The fourth and fifth factors in *Tarkington* (the debtor's conduct and the policy of ensuring prompt and effectual bankruptcy administration) also favor UFCU. The parties are in their respective positions due to the Debtor's conduct and her failure to

promptly exercise her rights under Section 522(f). The conduct charged to the Debtor includes not only her delay in bringing the Section 522(f) motion, but the careless manner in which her attorney prepared Motion and then failed to prosecute it.

The fourth and sixth factors in *Yingling* (the length of time between discharge and filing of the 522(f) motion, and the prejudice to judgment creditors) are duplicative of the considerations in *Tarkington*. The Court believes that the first and second factors in *Yingling* do not apply where a debtor seeks *nunc pro tunc* avoidance of a lien, because the debtor's act of voluntary repayment of the lien would be more relevant than the degree to which the creditor pursued the judgment pre-petition, or whether the parties communicated during the pendency of the bankruptcy case. With regard to the third and fifth factors in *Yingling*, the Debtor in this case has not offered any explanation of the "motivating cause of failure" to file the Section 522(f) motion prior to discharge or prior to her repayment of the lien or her reasons for waiting more than four years after the case was closed to seek avoidance of the lien. As for the seventh factor in *Yingling*, there is no reason to question UFCU's good faith.

### Conclusion

For the foregoing reasons, the Motion is denied. The Court will issue a separate order denying the Motion and closing the case.